# Richmond.

## EDMUND HUNT ROBERTS v. ALEXANDRIA WATER COMPANY.

### January 19, 1922.

Absent, Burks and Saunders, JJ.

1. WATERS AND WATER COURSES—*Construction of Contract Granting Right to Take Water—Case at Bar.*—In the instant case the owners of real property granted to a water company a certain mill with its appurtenances, together with certain water rights. By deed of about the same date the water company granted to the owners of the farm, grantors in the first deed, the right to use the surplus water in the mill race, and by a third deed of later date the owners of the farm granted the water company the privilege of passing its mains and pipes through certain portions of their land.

   *Held:* That the right of the owners of the land to take water depending upon the deed to use the water in the mill race; that there had been no superadded right to tap the mains of the company elsewhere; that the language of the deed was clear and simple, needing no interpretation, and could not be construed to grant the right to take the water directly from the water main at a point some distance away from the mill race.

2. WATERS AND WATER COURSES—*Construction of Contract Granting Right to Take Water—Case at Bar.*—Where a water company granted complainant's predecessors in title the right to take water from its mill race, the fact that the company permitted complainant's predecessors in title, who were officers of the company, to connect with its main at some distance from the mill race, does not indicate that it thereby intended to construe or modify the contract to take water directly from the mill race, or that the right to take from the main was a substitution for the right to take from the mill race, or that such right was anything more than a bare privilege or revocable license.

Appeal from a decree of the Circuit Court of the city of Alexandria. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Jas. R. & H. B. Caton,* for the appellant.

*Gardner L. Boothe,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

The complainant is the owner of a tract of land known as the Cameron farm, lying partly in Alexandria and partly in the county of Fairfax, upon which he resides. He is engaged in farming, has live stock thereon, and a number of employees. The defendant is a public service corporation which owns the water supply system with the necessary appurtenances connected with such an enterprise, which is furnishing water to the general public in and about the city of Alexandria for domestic and other purposes. Reuben Roberts and Robert F. Roberts and their respective wives, predecessors in title of the complainant, by deed dated May 1, 1851, conveyed to the company a certain mill with its appurtenances known as one of the "Cameron mills," in Fairfax county, together with certain water rights and water privileges belonging thereto, and the use of certain other land which might be required for necessary houses for the protection of its machinery, etc., all of which is particularly and carefully described in the conveyance.

The company, the grantee in the deed just referred to, by deed dated May 2, 1851, conveyed to the said Reuben Roberts and Robert F. Roberts the right and privilege of using the water in the mill race belonging to Cameron mill, in Fairfax county, for all farming purposes of the Cameron farm (excepting irrigation), also the full and free use and enjoyment of such surplus water in the mill race as might not at any time be required by the company to propel its machinery for the purpose of conducting water to the town

of Alexandria in accordance with its charter; such grant was not, however, to be construed to limit the company in the use of such water, or the raising of such quantities thereof as might be necessary for the future use of the company to any attainable elevation. The grantees in this deed covenanted that in the use of such water they would not commit any act, matter or thing by which the water in the mill race should become impure or unfit for use by the company for its purposes. There was a further provision that the expense of repairing the mill race should be borne equally by the parties; provided, however, that the grantees should not be required to contribute to or pay for any repairs which might be required after they had released or reconveyed to the company the right to the use of the surplus water granted by the deed.

Thereafter, September 27, 1851, the same Reuben Roberts and Robert F. Roberts, in consideration of $5.00, granted to the company, which was then engaged in the construction of its works, and more particularly in the location of its main pipes, conduits and fixtures, the privilege of passing its mains and pipes through certain portions of the land of the grantors, particularly described in the deed, reserving to the grantors the *fee simple* ownership and the use and enjoyment of the land along the line of the location of the pipes, in any manner not inconsistent with the uses and privileges granted.

The company constructed its plant and has been operating it for many years. The then owners of the Cameron farm and their successors in title down to the complainant, appear never to have taken the water directly from the mill race in accordance with the provisions of the deed of May 2, 1851, from the company. Instead thereof, fifty years or more ago they were allowed to tap the water main of the company, and by means of a connecting pipe have supplied

themselves with water on the Cameron farm for domestic and farm purposes.

In 1919, the State Corporation Commission of Virginia required the company to install a filtration plant and a plant to treat with chemicals the water furnished to its patrons, because of the fact that the water had become unpotable.

The point on the main tapped by the predecessors of the complainant is located between the water supply and the plant so erected for the filtration, purification and chemical treatment of the water, so that the water received by the complainant is described as "raw," "untreated" water, which is regarded as unfit for drinking purposes, certainly during certain parts of the year. On July 29, 1919, after the installation of the filtration plant, the company was notified by the State Board of Health to discontinue the furnishing of unfiltered water to consumers because unless properly treated it was unsafe for domestic use, and in consequence of such notice the complainant was advised that the pipe connection by which unfiltered and untreated water was carried for his domestic and farm uses would be discontinued. Thereupon, the complainant filed his bill, the object of which was to enjoin the company from breaking such connection. At the final hearing, the trial court dissolved the interlocutory injunction which had been theretofore awarded and dismissed the complainant's bill, from which decree this appeal has been allowed.

It is not necessary in this case to consider or determine the powers of the State Board of Health in the premises, this being a suit to which that board is not a party, and because it is unnecessary, as the rights of the parties, in our opinion, are manifest without any reference to the validity of the order of that board. The question raised requires the construction of the deeds to which reference has been made, with such aid as can be derived from the

attending circumstances and conduct of the parties interested.

The deed upon which the complainant must and does rely for the support of his contentions is that dated May 2, 1851, from the Alexandria Water Company to Reuben Roberts and Robert F. Roberts. So much of its language as it is necessary to recite follows:

"* * * the said party of the first part, in consideration of one dollar, *do* grant unto the said parties of the second part the right and privilege of using the water in the mill race belonging to the Cameron mills, in Fairfax county, Va., for all the farming purposes of the so-called Cameron farm (excepting irrigation). Also the full and free use and enjoyment of such surplus water in said mill race as may not at any time be required by said Alexandria Water Company to propel its machinery for the purpose of conducting water into the town of Alexandria in accordance with the act of the General Assembly of Virginia incorporating the said company, but this grant shall not be construed to limit the said Alexandria Water Company in the use of said water, or of raising such quantities thereof as may be necessary for the present and future use of said company to any attainable elevation." Then follow carefully drawn provisions designed to maintain the purity of the water in the mill race and for repairs. It is observed that on the previous day the grantees in this deed had conveyed the mill property and its appurtenances, together with all the water rights and water privileges appertaining thereto to the company. Each deed appears to be carefully drawn and designed to express definitely the true intent and agreement of the parties thereto. Later in the year, September 27, 1851, the same Reuben Roberts and Robert F. Roberts conveyed to the company the right to lay their pipes and mains upon other property, with careful description and provisions for the protection of their mu-

tual rights; among other provisions, requiring the pipe to be laid at least four feet below the surface of the earth, and reserving the *fee simple* to the grantors, with the right to cultivate all of the land.

[1] It is claimed that all of these deeds should be construed together as parts of a continuous and closely connected transaction, and that the tapping of the water main, under the circumstances heretofore stated constitutes a construction of the deed of May 2, 1851, by the parties themselves, and irrevocably establishes the complainant's right to maintain such connections. In a certain sense, it is true that the various conveyances are connected with each other, as they all relate to the property rights of the same parties, and to the establishment and operation of the plant of the company; that is, they were all promotive of that general purpose. Each conveyance, however, as has been indicated, was carefully drawn and is complete in itself, hence it is not perceived how connecting them with each other in any way aids or supports the complainant's claim. The first deed is a simple conveyance of the mill and property rights; the second grants to the then owners of the property the right to use the water in the mill race for the purposes indicated, the source of supply being explicitly designated three times in the deed—first, when the right to the use of the water therein for farming purposes is granted; again when the use of such surplus water "in said mill race" as might not be required by the company is granted, and still again when there is reference to the possible pollution of the water. In each instance, both the location and source of the supply are designated as the water in the mill race. Then when we come to the third deed in the sequence, that of September 27, 1851, we find nothing whatever with reference to any use of the water by the grantors, but this conveyance merely grants the company the right to lay mains in

certain other locations on the farm, and only reserves to the grantors the rights not inconsistent therewith. It seems to us that if this deed was intended to add to or to modify either of the previous conveyances, such intention would certainly have been expressed therein by appropriate language. So that the complainant's rights depend upon whether or not, to his clear right under the deed of May 2, 1851, to use the water in the mill race, there has in any way been superadded the right to tap the mains of the company elsewhere and to maintain such connection indefinitely. To state this proposition is to indicate the only proper solution of the question raised. The language which grants the right to take water from the mill race is simple, clear and definite, needs no interpretation, and clearly cannot be construed to grant the right to take the water directly from the water main at a point some distance away from the mill race.

The learned counsel for the complainant cites many authorities to establish the unquestioned legal doctrines upon which he relies, but we do not deem it necessary to discuss them because, in our view, they do not aid in the determination of the question here presented. If there had ever been any contract for such a connection, doubtless it would be fully protected, and if the language used in the deeds to be construed was doubtful in meaning, the rules governing in such cases would be applicable. The rules for the interpretation of ambiguous contracts cannot, however, be applied to instruments like these, which, as to the right here involved, are unambiguous.

[2] We find no support in the evidence for the contention that the parties have themselves construed the contract relied on as giving the complainant the legal right to maintain the connection, and to sustain it would do violence to that rule which can only be applied to the construction of con-

8

tracts where the language used is of doubtful import. It cannot be extended for the purpose of establishing a new and different contract from that which is proved. When such a new and different contract is relied on, it must be proved like any other essential fact.

It is proper to note that, covering a period of many years previous to the acquisition of the property by the complainant, his predecessors in title were connected with the company, one of them as president and two others as directors, and this is doubtless the explanation of the fact that the company permitted the connection with its main to be made. There is, however, no scintilla of evidence indicating that it was thereby intended to construe or modify the contract to take water directly from the mill race, that it was by way of substitution for that right, or that it was anything more than a bare privilege or revocable license.

Under the evidence in this case, the decree of the court dismissing the bill is justified.

*Affirmed.*