# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## T. H. BRAGG v. COMMONWEALTH.

### June 15, 1922.

1. INTOXICATING LIQUORS—*Indictment—Charging Two Offenses.*—An indictment charged that accused "did unlawfully sell ardent spirits, to-wit, flavoring extracts, for beverage purposes."

    *Held:* That the indictment charged only one offense, namely, the unlawful sale of ardent spirits, the words, "to-wit, flavoring extracts, for beverage purposes," being simply descriptive of the kind of liquid sold.

2. INTOXICATING LIQUORS—*Indictment—Charging Two Offenses.*—Under an indictment for a violation of the prohibition law two offenses may be charged in one count of the indictment.

3. INTOXICATING LIQUORS—*Bill of Particulars—Allegation that Purchasers of Liquor were of Intemperate Habits.*—In a prosecution for violation of the prohibition law the trial court did not err in overruling a motion of the accused to strike out that part of the bill of particulars which alleged that the persons (naming them) to whom it was alleged accused sold the liquor, were "men of intemperate habits."

4. INTOXICATING LIQUORS—*Burden of Proof—Liquor Sold Intoxicating.*— The burden was on the Commonwealth to prove that the liquid sold was intoxicating, either by analysis thereof, or by facts and circumstances which would satisfy the jury beyond a reasonable doubt that it would produce intoxication.

5. INTOXICATING LIQUORS—*Proof that Liquor was Intoxicating—Intemperate Habits of Purchasers.*—On the question of whether flavoring extracts sold were intoxicating the Commonwealth has the right to prove that the persons alleged to have purchased the flavoring extracts for beverage purposes from accused were men of intemperate habits, as tending to show that the extract sold contained ardent spirits and would produce intoxication, since people of this class are usually attracted by the sale of liquids which will intoxicate. Accordingly, it is not error to permit the purchasers to testify that they are men of intemperate habits.

6. INTOXICATING LIQUORS—*"Ardent Spirits"—Liquors which will Produce Intoxication.*—While it is true that the words "ardent spirits," according to their general acceptation, designate a liquid containing alcohol, yet among the liquids defined by section 1 of the prohibition act as "ardent spirits," are "all liquids, mixtures or preparations, whether patented or otherwise, which will produce intoxication." Thus the sale of any liquid which will produce intoxication is prohibited by law.

7. INTOXICATING LIQUORS—*"Intoxicated"*—*"Drunk."*—The words "intoxicated" and "drunk" are synonymous.

8. INTOXICATING LIQUORS—*"Intoxication."*—While "intoxication" has been defined as the mental and physical condition, produced by drinking excessive quantities of alcoholic liquors, this definition is inapplicable in prosecutions under the prohibition statute, since under the provisions of that act, if one sells a person enough of any liquid to affect his manner, disposition, speech, general appearance, or behavior, so as to be apparent to observation, he is guilty of selling him a liquid which will produce intoxication.

9. INTOXICATING LIQUORS—*Sale of Flavoring Extract—Evidence Held Sufficient to Support Conviction.*—In the instant case, a prosecution for violation of the prohibition act, accused, a merchant, sold to persons of intemperate habits a flavoring extract at different times. There was evidence that the extract would produce intoxication within the meaning of that term as used in the prohibition act, and a witness testified that various persons would go to the store of accused and come away apparently under the influence of intoxicants. Accused denied that he sold the extract for beverage purposes.

   *Held:* That under this and other evidence it could not be said that the court erred in refusing to set aside a verdict of conviction as contrary to the law and the evidence.

10. NEW TRIALS—*Verdict Contrary to the Law and the Evidence—Rule in Appellate Court.*—Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases, the evidence should be plainly insufficient to warrant the finding of the jury. And this restriction applies *a fortiori* to an appellate court. For in the appellate court there is superadded to the weight which must always be given the verdict of the jury, fairly rendered, that of the opinion of the judge who presided at the trial, and under Code of 1919, section 6363, the judgment of the trial court is not to be disturbed unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.

Error to a judgment of the Circuit Court of Alleghany county.

*Affirmed.*

The opinion states the case.

*Geo. A. Revercomb, R. C. Stokes* and *W. Chapman Revercomb,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

T. H. Bragg, the plaintiff in error, hereafter called the accused, was convicted by a jury in the Circuit Court of Alleghany county of a violation of the prohibition law (Acts 1918, c. 388), and the case is here upon a writ of error to the judgment of that court.

The offense charged in the indictment is, that T. H. Bragg "did unlawfully sell ardent spirits, to-wit, flavoring extracts, for beverage purposes."

The accused relies on six assignments of error to the rulings of the trial court.

[1, 2] The first assignment relates to the action of the court in overruling the demurrer to the indictment. It is claimed that the indictment charges the accused with two separate and distinct offenses—first, selling ardent spirits, and, second, selling flavoring extracts for beverage purposes—and that this cannot be done in one indictment.

The indictment, in our view, charges only one offense, to-wit, the unlawful sale of ardent spirits, the words, "to-wit, flavoring extracts for beverage purposes," being simply descriptive of the kind of liquid sold. However, it is immaterial whether there be one or two offenses charged, as this court has held that under an indictment for a violation of the prohibition law two offenses may be charged in one count of the indictment. *Pine* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652.

This assignment is without merit.

[3-5] The second assignment relates to the action of

the court in overruling the motion of the accused to strike out that part of the bill of particulars which alleges, "the said Dickson and Burnett Morris being men of intemperate habit."

The burden was on the Commonwealth to prove that the liquid sold was intoxicating, either by analysis thereof, or by facts and circumstances which would satisfy the jury beyond a reasonable doubt that it would produce intoxication. On the latter question the Commonwealth had the right, with the words complained of stricken from the bill of particulars, to prove that the parties named were men of intemperate habits, as tending to show that the extract sold contained ardent spirits and would produce intoxication, since people of this class are usually attracted by the sale of liquids which will intoxicate.

This assignment is likewise without merit.

The third and fourth assignments complain of the action of the trial court in permitting John Dickson and Burnett Morris to testify that they were men of intemperate habits.

For the reasons given in passing upon the second assignment, *supra*, there is no merit in these assignments.

The fifth assignment is to the action of the court in granting an instruction which told the jury, "They should find the defendant guilty, if the jury believed beyond a reasonable doubt, from the evidence, that the defendant sold flavoring extracts for beverage purposes, either knowing or having reasonable cause to believe that they would be so used, which flavoring extracts would produce intoxication."

The ground of the accused's objection is that there is no evidence upon which to base this instruction. In

this view we cannot concur, for reasons which will appear when we discuss the sixth assignment of error.

The sixth assignment is that the court erred in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

[6] While it is true, that the words "ardent spirits," according to their general acceptation, designate a liquid containing alcohol, yet it must be borne in mind that the prohibition act itself construes these words, and among the liquids defined by section 1 of the statute as "ardent spirits," are "all liquids, mixtures or preparations, whether patented or otherwise, which will produce intoxication." Thus the sale of any liquid which will produce intoxication is prohibited by law. Section 49 of the act also gives us the meaning of the word "intoxication," as used in the act, as follows: "Any person who has drunk enough ardent spirits to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed for the purposes of this act intoxicated." Section 58 further provides that, "This entire act shall be deemed an exercise of the police power of the State for the protection of the State, for the protection of the public health, peace and morals, and the prevention of the sale and use of ardent spirits, and all of its provisions shall be liberally construed to effect these objects." *Christian* v. *Commonwealth*, 132 Va. 111 S. E. 130.

[7] The words "intoxicated" and "drunk" are synonymous. Words and Phrases, Vol. 4, p. 3734.

[8] Black's Law Dictionary defines "intoxication" as the mental and physical condition produced by drinking excessive quantities of alcoholic liquors.

It will be observed that in Virginia the foregoing

definition of "intoxication" is now inapplicable in prosecutions under the prohibition statute, since under its provisions, if you sell a person enough of any liquid to affect his manner, disposition, speech, general appearance, or behavior, so as to be apparent to observation, you are guilty of selling him a liquid which will produce intoxication.

[9] The facts appearing in evidence are substantially as here stated.

The accused is a merchant and postmaster at Mallow, in Alleghany county, about four miles from Covington. The concoction which the witnesses for the Commonwealth purchased from him was labeled, "Noah's Imitation Blackberry Flavoring," which he purchased for $1.00 and sold for $2.00 per bottle. John Dickson, a witness for the Commonwealth, bought several bottles within six weeks prior to the trial. The first time he purchased it he took it home to his mother as a flavoring extract, but she refused to use it, and he drank it, and also drank all that he purchased on subsequent occasions. Dickson was a man of intemperate habits and had purchased it, opened the bottle and tasted it, in the store of the accused. The accused had seen him several times when he was in an intoxicated condition. He testified further that you "feel it, when you drink right smart," and "you could drink right smart of it and it would make you feel pretty good."

Burnett Morris, called as an adverse witness for the Commonwealth, testified that he had bought "Noah's Imitation Blackberry Flavoring" from the accused on various occasions, both for drinking and flavoring purposes, and when he bought it for flavoring purposes he would drink some of it, and had drunk it in the store of the accused, but could not say the accused saw

him. He said he had drunk enough of it to "feel it," and "you can't drink that without diluting it. You have to have some water." He admitted that he was a man of intemperate habits and testified that it was generally known that John Dickson got on "protracted sprees."

J. L. Morris, a witness for the Commonwealth, who lived sixty or seventy yards from Bragg's store, testified that both Dickson and Morris were men of intemperate habits and it was a notorious fact that Dickson had been of such habits for years. This witness further testified that various persons would go to the store of the accused and come away, from their appearance and demeanor, under the influence of intoxicants, but he could not say that they secured them from the accused. Many of these men were unknown to him although he had lived at Mallow for twenty years. Some would come on foot and some in cars, sometimes on Sunday and sometimes in the week. Ed. Cook and Frank Cook, who "liked their toddy" and lived in Covington, were there frequently on Sunday.

Harry Vowels testified that he saw Dickson in the store of and in the presence of the accused, in an intoxicated condition, and had seen him drinking in the store.

The accused, testifying in his own behalf, admitted that he knew Dickson and Morris were men of intemperate habits and that he sold them flavoring extract, but claimed he sold it not to be drunk but to be used for cooking purposes, and that he purchased "Noah's Imitation Blackberry Flavoring" as a flavoring extract and sold it as a flavoring extract. He admitted that he knew it contained alcohol, but did not know whether it would "fly to the head or not." He cautioned Dickson and Norris, when they bought it, saying to

them: "This is flavoring extract. If you want it for that, it will be all right, but if you want it for other purposes, beverage, set it back." He admitted that Dickson had been in his place drinking, and that he had seen him in other places drinking. Three other witnesses testified that the accused was a man of good character and bore a good reputation as a law abiding citizen.

[10] The rule governing this court in granting a new trial on the ground that the verdict is contrary to the law and evidence has been well stated by the court in *Grayson's Case,* 6 Gratt. (47 Va.) 712, where it is said: "Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases, the evidence should be plainly insufficient to warrant the finding of the jury." And this restriction applies *a fortiori* to an appellate court. For in the appellate court there is superadded to the weight which must always be given the verdict of the jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial. *Blosser* v. *Harshbarger,* 21 Gratt. (62 Va.) 216; *Brugh* v. *Shanks,* 5 Leigh (32 Va.) 598.

In addition, the statute, section 6363 of the Code, now provides that, where a party excepts to the action of the court in refusing a new trial, where the evidence, as in the instant case (and not the facts), is certified, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong, or without evidence to support it."

The evidence presents a case, the determination of which was for the jury.

Under the law and the evidence, we find no reversible error, and the judgment complained of will be affirmed.

*Affirmed.*