# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LOUIS BERNSTEIN v. SAMUEL BORD.

### April 29, 1926.

1. MORTGAGES AND DEEDS OF TRUST—*Parol Agreement between Debtor and Creditor that if Property did not bring Sufficient Amount at Public Sale to Discharge the Debt the Creditor should Buy it in and Release the Debtor for any Deficiency on Account of the Debt—Case at Bar.*—In the instant case the only question presented for the determination of the jury was whether or not the plaintiff, the holder of a bond of defendant secured by a deed of trust, had a valid parol understanding or agreement with defendant, before the bond referred to became due, to the effect that the property should be sold under said deed of trust and if it did not bring a sufficient amount at the public sale to discharge the ·debt, the plaintiff should buy in and release the defendant from any deficiency on account of the debt. The evidence was confined entirely to the testimony given by the parties themselves and for the most part was in conflict.

   *Held:* That a verdict for defendant resolved the question in defendant's favor and the appellate court was bound by the conclusion of the jury and must accept defendant's statement in regard to the transaction as true.

2. CONTRACTS—*Acceptance—Acceptance Inferred.*—While it is true that in order to constitute a contract there must be an assent to or acceptance of an offer, it is well settled law that the assent need not be given in express words, but may be inferred from the acts and conduct of the offeree.

°3. MORTGAGES AND DEEDS OF TRUST—*Parol Agreement that if Sale Under Deed of Trust did not Bring Sufficient Amount to Discharge the Debt, Beneficiary in the Deed of Trust should Buy the Property and Release the Debtor From any Deficiency—Acceptance of Agreement by Grantor in Deed of frust—Case at Bar.*—In the instant case, an action by beneficiary in a deed of trust to recover the difference between what the property brought at public sale under the deed and the debt, the only question at issue was whether plaintiff, the beneficiary in the deed of trust, and defendant, grantor, had a parol· agreement before the bonds secured by the deed of trust became due to the effect that the property should be sold under the deed of trust and that if it did not bring the sufficient amount to dis-

charge the debt, plaintiff should buy it in and release defendant from any deficiency on account of the debt. Defendant testified that plaintiff, the beneficiary in the deed of trust, told him that if the property did not bring enough money to pay the debt that he would buy it in and "call it square." Defendant went home and made no further effort to communicate with plaintiff in regard to the matter or to make any other arrangement to pay the debt or otherwise to protect his interest in the property.

*Held:* That although it did not appear that defendant expressly assented in words to the proposition made by plaintiff, yet, taking into consideration the language used by the parties on the occasion, the circumstances preceding and surrounding it, and defendant's subsequent conduct in reference to the matter, the jury were justified in finding that defendant intended to and did assent to plaintiff's proposal; and that an agreement existed between the parties which had the effect of releasing defendant from the debt plaintiff was seeking to recover.

4. CONTRACTS—*Consideration—Definition of Valuable Consideration.*—A valuable consideration is a benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it, to the party promised.

5. CONTRACTS—*Consideration—Mutuality of Promise.*—Mutuality of promise as a general rule constitutes a sufficient consideration to support a contract.

6. MORTGAGES AND DEEDS OF TRUST—*Promise of Beneficiary in a Deed of Trust to Buy in the Property and Release the Debtor if the Property did not Bring at Public Sale a Sufficient Amount to Pay the Debt—Consideration for the Promise—Case at Bar.*—In the instant case, an action by a beneficiary in a deed of trust to recover the deficiency between the amount that the property brought at a public sale under the deed and the debt, the defendant alleged a promise made by the plaintiff that if the property did not bring an amount sufficient to discharge the debt, the plaintiff would buy it in and "call it square." Plaintiff told defendant that he considered the property worth considerably more than the debt. On the other hand, in agreeing to allow his property to be sold at auction without making further effort to satisfy the deed of trust, defendant took the risk of losing the difference between the debt and the actual value of the property.

*Held:* That this was a sufficient consideration to support the agreement.

7. NEW TRIAL—*Appeal and Error—Where Court would Have Given a Different Verdict.*—Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different

verdict. To warrant a new trial in such cases, the evidence should be plainly insufficient to warrant the finding of the jury. And this restriction applies *a fortiori* to an appellate court.

8. NEW TRIAL—*Appeal and Error—Verdict Approved by Trial Judge—Weight to be Given to Trial Judge's Approval.*—In the appellate court there is superadded to the weight which must always be given to the verdict of the jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial.

9. NEW TRIAL—*Where Reasonably Fair-Minded Men May Differ—Conflicting Evidence.*—If there is a conflict of testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by the appellate court.

Error to a judgment of the Circuit Court of the city of Portsmouth, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Topping & Topping* and *Jas. G. Martin & Bro.*, for the plaintiff in error.

No appearance for defendant in error.

CHINN, J., delivered the opinion of the court.

On September 28, 1922, Louis Berstein loaned Samuel Bord $3,270.00, for which Bord executed his three several bonds for the sum of $1,090.00 each, bearing interest from date, and payable one, two and three years after date, respectively. The bonds were secured by a deed of trust on certain real estate belonging to the obligor located in the town of Cape Charles, Virginia. Bord defaulted in the payment of the first bond to fall.

due, and the property was sold at public auction, in accordance with the terms of the deed of trust, on November 17, 1923. At this sale Bernstein, being the only bidder, became the purchaser of the property at the price of $2,500.00, and it was conveyed to him by the trustee accordingly. Bernstein then instituted this action by notice of motion to recover of Bord the balance due on the debt evidenced by said bonds, amounting, after deducting the net proceeds of said sale, to $1,273.09. Bord filed an affidavit denying that he owed the plaintiff any part of the debt claimed in the notice, and a jury was impaneled to try the issue, who, after hearing the evidence, returned a verdict in favor of the defendant. The plaintiff thereupon moved the court to set aside the verdict on the ground that the same was contrary to the law and the evidence, but the court overruled the motion and entered judgment for the defendant, which action on the part of the court is assigned as error.

[1] It clearly appears from the evidence and the whole record that the only question presented for the determination of the jury was, whether or not the plaintiff and defendant had a valid parol understanding or agreement, before the bond referred to became due, to the effect that the property should be sold under said deed of trust and if it did not bring a sufficient amount at the public sale to discharge the debt, Bernstein should buy it in and release Bord from any deficiency on account of said debt.

The evidence in reference to this question is confined entirely to the testimony given by the parties themselves, and is for the most part in conflict, but all such matters having been resolved by the jury in defendant's favor, we are bound by their conclusions and must accept Bord's statement in regard to the transaction as

22

true.    This statement as given on his examination in chief is as follows:

"By Mr. Koteen:

"Q. Go ahead.

"A. About ten days before this first note came due, I received a regular bank notice from the Bank of Commerce that a note for $1,090.00 would be due on September 28th, and I knew, of course, that was the note that Mr. Bernstein held against me on the Cape Charles property.    I wrote Mr. Bernstein a letter, telling him that I would be over on a certain day, knowing that he is sometimes out of town, having some farm interests and other interests out of town, that sometimes he is not there when I got there, so I wrote him a letter. It happened that day I could not get there.    It was on a Thursday, I think.    I am positive it was on a Thursday, so I would send him a telegram, telling him I would be there Sunday positively.    I arrived there Sunday and went to Mr. Bernstein's home and had a conversation with him, telling him I would like to have a six months' extension on that first mortgage.    He said: 'Mr. Bord, I am in very bad need of money.    I owe the bank over here some money and owe the National Bank of Commerce some money in Norfolk, and I would appreciate it if you could do something for me.' I said: 'Mr. Bernstein, we have had a mighty bad season last season which you know, and things are not very extra.'

"By the court:

"Q. Don't go into that detail.

"A. So I told him, so he said he would come to Norfolk.    He was coming to Norfolk that day and he would see me in Norfolk; so coming over on the boat we got in conversation and he said: 'Well, Mr. Bord, you don't run that store any more in Cape Charles and this prop-

erty here wouldn't be much to you. Suppose we go ahead and put up that piece of property at auction.' He said: 'I think that piece of property will bring around $4,000 today. You paid $5,000 for it and it rents for $50.00 a month. That will relieve you. You have received some rent for it, so you won't lose very much and you won't have the trouble of coming over here and collecting rent and looking after property and this and that and it would be off your mind.' I said: 'Mr. Bernstein, suppose that does not bring enough money to cover the $3,000 which you loaned me.' He said: 'We will call the thing square. I will buy it in and we will call it square.' ''

[2, 3] It is contended by plaintiff in error that the conversation above detailed does not constitute a contract, because Bord "does not pretend that he ever accepted this proposition, consented thereto, or did or omitted anything on the faith thereof."

While it is true that in order to constitute a contract there must be an assent to or acceptance of an offer, it is well settled law that the assent need not be given in express words, but may be inferred from the acts and conduct of the offeree. *Thompson* v. *Artrip*, 131 Va. 347, 108 S. E. 850; *Richmond Eng. Corporation* v. *Loth*, 135 Va. 110, 115 S. E. 774; *Colgin* v. *Henley*, 6 Leigh (33 Va.) 85; 13 Corpus Juris, pages 241-266.

It is evident that at the time the conversation above referred to took place between the parties, Bord was eager to make some arrangement with Bernstein that would enable him to save his property from sale under the deed of trust. After writing and telegraphing Bernstein he had made a trip from his home in Portsmouth to Cape Charles for the express purpose of trying to induce Bernstein to give him a six months' extension on the bond soon to fall due, but Bernstein had only

given him to understand he wanted his money and put him off in regard to the matter. When they were together on the steamer that evening on their way to Norfolk, and while Bord was naturally in an anxious state of mind, Bernstein proposed that they put the property up at auction, and agreed if it did not bring enough money at the sale to pay what Bord owed him, he would buy it in and "call the thing square." Bernstein knew that the property had cost Bord $5,000.00 and was bringing in a regular rental of $50.00 per month, and he evidently considered he would get a bargain if he could buy the property for the debt. As an additional inducement to Bord to agree to his proposition, he told him that the property would bring at auction around $4,000.00, and it would relieve him (Bord) to get rid of it. On the other hand Bord was in this situation: Bernstein had practically refused to grant him an extension of time, and he had reason to believe from what Bernstein told him that he would realize something out of his equity in the property if it was sold at auction. It also appears that after this conversation between the parties, Bord went home and made no further effort to communicate with Bernstein in regard to the matter, to make any other arrangement to pay the debt, or to otherwise protect his interests in the property. Nor did he hear anything more from Bernstein on the subject until he received the notice of this suit sometime during the following February. Although it does not appear that Bord expressly assented in words to the proposition made by Bernstein, taking into consideration the language used by the parties on that occasion, the circumstances preceding and surrounding it, and Bord's subsequent conduct in reference to the matter, we think the jury were justified in finding that Bord intended to and did assent to Bern-

stein's proposal and that an agreement existed between the parties which has the effect of releasing Bord from the debt which Bernstein is seeking to recover. It may be at the least reasonably inferred that Bord's anxiety was relieved after Bernstein proposed what he did in regard to the sale of the property and that he paid no further attention to it for the reason that he relied upon Bernstein's promise that he would not have to pay him anything if he succeeded in buying the property in for an amount equal to or less than the debt. It is true he stated he would have attended the sale if he had known of it, but in view of his interest in any possible surplus that might be derived from the sale this action would have been entirely consistent with his right to see that the sale was fairly conducted and that Bernstein lived up to his contract.

[4] It is contended further that there was no consideration for the contract, but with this we cannot agree. In *Clay's Admr. v. Kelly*, 120 Va. 437, 91 S. E. 621, it is said: "'A valuable consideration is a benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised.' 4 Min. Inst., part 1, page 22."

[5, 6] Leaving out of view any element of mutuality of promises, which as a general rule constitutes a suf-. ficient consideration to support a contract, it seems manifest that Bernstein was bound to derive benefit from the performance of the promise relied on by the defendant in this case. His agreement was to release Bord from the debt only in the event that he could buy the property at a price less or equal to the amount that Bord owed him, and he was under no obligation to do so under any other circumstances. To carry out his agreement, therefore, simply meant that Bernstein was to secure the ownership of the property at a price con-

siderably less than its real value, according to his own estimate. On the other hand, in agreeing to allow his property to be sold at auction without making further effort to satisfy the deed of trust, Bord took the risk of losing the difference between the amount he owed Bernstein and the actual value of the property. For these reasons we think there was a sufficient consideration to support the agreement.

The petition contains two other assignments of error which perhaps should be noticed. One of said assignments relates to the action of the court in giving, over plaintiff's objection, the following instruction, which was the only one asked for and given in the case:

"The court instructs the jury that if they find from the evidence that the defendant's real estate was sold under the deed of trust pursuant to an understanding between the plaintiff and defendant that in the event the said property did not bring the amount of the plaintiff's debt secured thereby, that he, the defendant, would be released from any deficiency resulting therefrom, then the jury is to find a verdict for the defendant, otherwise they are to find for the plaintiff."

The other and only remaining assignment is that the court erred in allowing defendant's evidence, as to the agreement between the plaintiff and himself, to go to the jury.

[7, 8] Both the instruction and the evidence above referred to are objected to on the grounds that the evidence fails to show a contract existed and there was no consideration for it. The identical questions presented by these assignments of error having been necessarily decided in the preceding discussion of the case, it is apparent that further comment upon them would be useless repetition. While the evidence undoubtedly lacks in some degree the circumstantial and definite qualities which are to be desired, and may, in some

particulars, be considered as somewhat nebulous in character, yet upon a careful consideration of the whole case, we are of opinion that the judgment of the trial court should be affirmed. As stated by the court in *Bragg* v. *Commonwealth*, 133 Va. 645, 112 S. E. 609: " 'Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases, the evidence should be plainly insufficient to warrant the finding of the jury.' And this restriction applies *a fortiori* to an appellate court. For in the appellate court there is superadded to the weight which must always be given to the verdict of the jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial. *Blosser* v. *Harshbarger*, 21 Gratt. (62 Va.) 216; *Brough* v. *Shanks*, 5 Leigh (32 Va.) 598."

And in *Forbes* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, Judge Burks, speaking for the court, said this:

[9] "If there is a conflict of testimony on a material point, or if reasonably fair minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court   *   *   *."

The evidence presents a case peculiarly within the province of the jury, and the judgment of the trial court should not be disturbed unless it appears that it is plainly wrong or without evidence to support it.

*Affirmed.*