# VARNER *v.* STATE OF INDIANA.

[No. 13,678.   Filed May 8, 1929.]

*Milton B. Hottel*, for appellant.

*Arthur L. Gilliom*, Attorney-General, and *Harry L. Gause*, Deputy Attorney-General, for the State.

NEAL, J.—This is a criminal prosecution wherein the appellant was charged by indictment with the unlawful sale of intoxicating liquor to one Winnie Kirkpatrick, in violation of §2717 Burns 1926.

Appellant filed a motion to quash the indictment, which motion was overruled and thereafter a plea of not guilty was entered. The case was tried before the jury

and a verdict rendered that the appellant was guilty as charged. The court pronounced judgment on the verdict.

The errors assigned are: (1) Overruling the motion to quash the indictment; (2) overruling the motion for new trial, specifying as causes therein that the evidence was insufficient and that there was certain misconduct on the part of one of the jurors.

No error can be predicated on the refusal of the trial court to sustain appellant's motion to quash, for the record fails to show an exception to the ruling of the court. *Marshall* v. *State* (1922), 192 Ind. 66, 135 N. E. 177.

A condensed statement of the evidence favorable to conviction is as follows: That the defendant was operating a restaurant and soft drink parlor at Greenfield, Indiana; that during the month of May, 1926, and while operating such business, the appellant sold a "spiked coke" to one Winnie Kirkpatrick; that, on this particular occasion, Kirkpatrick, with two or three other boys, went to appellant's place and ordered a "spiked coke"; that Kirkpatrick said for the appellant to spike them with anything that he had; that these "spiked cokes" were brought to the boys and twenty-five cents charged for each; that Kirkpatrick did not have the money to pay for his order, so one of the other boys paid his bill; that these "spiked cokes" contained intoxicating liquor and, further, that they could feel the effects from drinking the one glass. Other evidence was before the jury to the effect that appellant had made previous sales of similar mixtures, for which he charged twenty-five cents; also that appellant had made threats to his employees that, if they talked about his selling liquor, he would punish them.

Appellant presents the following propositions in support of the alleged insufficiency of the evidence: (1)

The crime charged is an unlawful sale of intoxicating liquor to Winnie Kirkpatrick in 1926; that the witness Kirkpatrick did not buy or pay for the drink which he drank on that occasion, but that it was paid for by some other member of the party; (2) that the drink served was Coca Cola and no one saw appellant "spike" the drink; (3) that there is no competent evidence to prove the drink served was intoxicating liquor.

In this case, the evidence discloses a sale by appellant to the witness Kirkpatrick. In the case of *Ahearn* v. *United States* (1925), 3 Fed. (2d) 808, the court said: "As to the whisky mentioned . . . it clearly appears from the testimony that the parties had fully agreed upon all the terms of the sale, the quantity to be sold, the purchase price, the time and place of delivery, and that delivery was made. Nothing remained to be done but the payment of the purchase price." The fact that another member of the party paid for the liquor and discharged the obligation of the witness to the appellant for the purchase price was immaterial. The offer to buy, the acceptance of the same and the delivery constituted an executed contract. See *Hammer* v. *United States* (1918), 249 Fed. 336, 161 C. C. A. 334.

We observe that the witness Kirkpatrick was asked the following questions, and gave answers thereto, viz.:

Question. "Just tell the jury whether or not there was intoxicating liquor in it? Ans. There was."

Question. "Tell the jury what it smelled like? Ans. It smelled like intoxicating liquor, and they all smell alike."

Question. "And tell the jury whether it was intoxicating—whether you could feel the effects of it? Ans. I did."

Question. "Are you familiar with the taste of intoxicating liquor? Ans. Yes."

Question. "How do you know that this was intoxicating liquor, or was an intoxicant of some kind that was in the coke? Ans. I smelled it and tasted it."

A witness who is familiar with intoxicating liquor may testify from his sense of smell that certain liquor is whisky, *Zoller* v. *State* (1920), 189 Ind. 114, 126 N. E. 1; *Shelton* v. *State* (1921), 191 Ind. 228, 132 N. E. 594; also, a witness, with the same qualifications as above, may give his opinion whether a liquor which he has tasted is intoxicating liquor of a certain kind. *Lewinsohn* v. *United States* (1921), 278 Fed. 421; *People* v. *Savage* (1923), 225 Mich. 84, 195 N. W. 669; *Rolando* v. *United States* (1924), 1 Fed. (2d) 110. Further, the intoxicating character of the drink sold as a beverage may be shown by the testimony of persons who have drunk the same and know the intoxicating effects produced by such use. *United States* v. *Hill* (1924), 1 Fed. (2d) 954; *Bragg* v. *Commonwealth* (1922), 133 Va. 645, 112 S. E. 609; *State* v. *Horowich* (1922), 121 Me. 210, 116 Atl. 226; *Carson* v. *State* (1881), 69 Ala. 235; *Carl* v. *State* (1888), 87 Ala. 17, 6 So. 418, 4 L. R. A. 380. See *Commonwealth* v. *Reyburg* (1889), 122 Pa. St. 299, 16 Atl. 351, 2 L. R. A. 415; *Lunenberger* v. *State* (1896), 74 Miss. 379, 21 So. 134; *People* v. *Seeley* (1905), 105 App. Div. 149, 93 N. Y. Supp. 982, 183 N. Y. 544, 76 N. E. 1102; *State* v. *Robinson* (1900), 61 S. C. 106, 39 S. E. 247.

In the case of *West* v. *State* (1904), 32 Ind. App. 161, 69 N. E. 465, the court said: "The court permitted one Virgil Starke, a witness for the state, to testify that he had bought and drunk hop ale at other places than the defendant's; that it was intoxicating. . . . It is claimed that this was error. It was competent for the purpose of showing that hop ale was intoxicating."

One of the questions for the jury to determine was that the "spiked coke" was intoxicating liquor. The

witness said the drink contained intoxicating liquor, and gave his opinion which was based upon his smell, taste and the effects produced by drinking the "spiked coke" sold him by appellant. It was for the jury to determine what weight should be given his testimony.

To this case, we may well apply the rule of law often repeated in the decisions of our Supreme Court, in answer to appellant's proposition that there is no direct evidence that appellant "spiked" the coke, as follows: "Where the circumstantial evidence in a case is of such character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused and the other favorable to his innocence, then, under such circumstances, it is not within the province of the Supreme Court to determine which inference ought to control the jury." *Lee* v. *State* (1921), 191 Ind. 515, 132 N. E. 582.

Appellant, in support of his cause for a new trial which is based on the alleged misconduct of a juror, presents the affidavit of two of the jurors and the appellant, that one of the jurors, during the deliberation of the jury, said that he knew that appellant was guilty because he had purchased Coca Cola spiked with alcohol at the place of business operated by appellant. The affidavits of the jurors set forth what was supposed to have occurred in the jury room during the deliberations of the jurors on their verdict. It is well-settled that a juror cannot impeach the verdict of a jury upon which he sat at the time such verdict was rendered, by affidavits or evidence as to what was said and done in the jury room at a time when he was engaged, with other jurors, in arriving at a verdict. *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467, 80 N. E. 415; *Hutchins* v. *State* (1898), 151 Ind. 667, 52 N. E. 403; *Stanley* v. *Sutherland* (1877), 54 Ind. 339; 5 Wigmore, Evidence,

(2d ed.) §2354. The affidavit of the appellant discloses that "the information concerning said juror was given to this affiant and defendant by jurors who participated in the trial of said cause as jurors." Inasmuch as the affidavit of the jurors cannot be received to impeach their own verdict, it would necessarily follow that appellant could not support his motion for a new trial by an affidavit based upon information received from the jurors as to what occurred in the jury room during the time of their deliberations. *Hutchins* v. *State, supra.*

Appellant earnestly contends that the information imparted to the court by virtue of the affidavits of two of the jurors should be received by the trial court as evidence that the juror who is alleged to have told his fellow jurors, while deliberating upon their verdict, that he had purchased Coca Cola of the appellant spiked with alcohol, concealed and misrepresented material facts at the time of his examination on his *voir dire.*

In the case of *McDonald* v. *Pless* (1915), 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300, the court said: "But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference."

In the instant case, appellant cannot, by affidavits of two of the jurors, present to the trial court, in support of

his motion for a new trial, the expressions of a particular juror made while the jury was deliberating upon its verdict, in proof of the allegations that the juror misrepresented and concealed material facts upon his examination concerning his qualifications to act as a juror. We may well quote from 5 Wigmore, Evidence (2d ed.) §2348, p. 106, as follows: "The jurors' deliberations during retirement, their expressions, arguments, motives, and beliefs, represent that state of mind which must precede every legal act and is in itself of no jural consequence. The verdict, as finally agreed upon and pronounced in court by the jurors, must be taken as the sole embodiment of the jury's act. Hence it stands, irrespective of what led up to it in the privacy of the jury room—precisely as the prior negotiations of the parties to a contract disappear from legal consideration when once the final agreement is reduced to writing and signed."

Judgment affirmed.