Miller *v.* The State.

---

No. 17,748.

## Miller *v.* The State.

| 144 | 401 |
| 149 | 575 |

EVIDENCE.—*Warehouse Receipt.*—A receipt by a warehouseman for a specified quantity of wheat "at stored per bushel, fire and heating at owner's risk," sufficiently shows that the wheat was received by him as a warehouseman for storage, and was not sold to him.

WAREHOUSEMAN.—*Receipt.—Statutory Requirement.—Estoppel.*— A warehouseman cannot claim, in a prosecution under sections 8726, 8728, R. S. 1894, for disposing of goods for which a receipt has been given, without the consent of the holder thereof, that the paper given by him, and acknowledging on its face the receipt of goods for storage, does not conform to the requirements of the statute.

VOL. 144—26

SAME.—*Receipt.—Sufficiency Of.*—A receipt by a warehouseman, in the following form : "Received of J. T. 126 bu. 20 lbs. wheat, test 59 wt. at stored per bushel. Fire and heating at owner's risk," is in substantial compliance with section 8721, R. S. 1894, requiring every warehouseman to give a receipt on demand of any person from whom he receives goods, setting forth the "brand, quality, kind, and description thereof," to be designated by some mark.

SAME.—*Mixing and Selling Bailed Goods.—Liability.—Criminal Law.*—A warehouseman cannot, under section 8726, R. S. 1894, mix wheat received by him for storage with other wheat in his warehouse and sell the mixture in the course of business, without the written consent of the holder of a receipt therefor given by him, or the surrender of such receipt.

INSTRUCTION TO JURY.—*Not Based on Evidence.*—An instruction is properly refused, where there is no evidence on which to base it.

CRIMINAL LAW.—*Warehouseman. — Statute Construed.— Affidavit and Information.*—A prosecution of a warehouseman for selling or removing from his control goods for which he has given a receipt, without the written consent of the holder thereof, in violation of sections 8726–8728, R. S. 1894, providing that one who violates any of its provisions shall be deemed a "cheat and swindler, and subject to indictment," may be, by affidavit and information, under section 1748, providing that all public offenses, except "treason and murder," may, in certain cases, be prosecuted in that manner as well as by indictment.

From the Kosciusko Circuit Court.

*J. D. Widaman* and *L. W. Royce*, for appellant.

*W. A. Ketcham*, Attorney-General, and *H. S. Biggs*, for State.

HOWARD, J.—The appellant was prosecuted by affidavit and information, for a violation of the provisions of sections 7 and 9 of the act relating to warehousemen and warehouse receipts, etc., approved March 25, 1879; Acts 1879, p. 231; sections 8726, 8728, R. S. 1894 (sections 6547, 6549, R. S. 1881).

It is charged in the information that on or about the 30th day of October, 1893, the appellant was a storage merchant and warehouseman in Kosciusko

county, and then and there held himself out to the public as a person keeping and operating a storage room and warehouse for receiving in store and caring for wheat and other grain and personal property, and was then and there receiving in store wheat and other grain and personal property from depositors; that one Jonathan Tinkey, on or about said 30th day of October, 1893, in said county, delivered to appellant, and entrusted to him as bailee, in store for the said Tinkey in appellant's storeroom and warehouse, one hundred and twenty-six bushels and twenty pounds of wheat of the value of $69.50, the property of the said Tinkey; that the appellant issued and delivered to said Tinkey a storage receipt for said wheat; which receipt the said Tinkey received and still holds; that the appellant, while holding said wheat in store for said Tinkey, and without the written consent of Tinkey, did then and there unlawfully, fraudulently, feloniously, wilfully and purposely, sell, dispose of, ship out and remove beyond the immediate control of him, the appellant, all of said wheat, and did unlawfully, fraudulently, feloniously and purposely convert said wheat to his own use, without the written consent of said Tinkey.

A motion to quash the affidavit and information having been overruled, the appellant entered his plea of not guilty. Whereupon the cause was tried by a jury, who returned a verdict of guilty, assessing as punishment imprisonment in the State's prison for three years, with a fine of $250; and over a motion for a new trial judgment was entered upon the verdict.

The overruling of the motion to quash and the motion for a new trial are assigned as errors.

Under their first assignment of error, counsel for appellant say: "In contending that the information in this case is not sufficient to sustain a criminal

prosecution, we are aware that we are running counter to the opinion of this court as expressed in the case of the *State* v. *Miller,*" 140 Ind. 168. "In that case," continue counsel, "an information precisely like the one under debate was held to be sufficient. But we are constrained to believe that this court will not adhere to the opinion there expressed, when it comes to review the grounds upon which it is based."

We have carefully considered the able argument of counsel, asking us to overrule the case of *State* v. *Miller, supra,* but are satisfied that nothing advanced in that argument or shown in the authorities cited casts any doubt upon the correctness of the conclusion there reached. No good purpose would be served by again entering into a detailed discussion of questions there settled.

An inspection of the act of March 25, 1879, here charged to have been violated, makes it evident that the legislature, in passing it, had in mind the protection of the producing classes from losses such as shown in this case. The act is quite distinct in form and purpose from the public warehouse act of March 9, 1875, as amended March 29, 1879. The fact that the compilers of the revised statutes inserted the act of 1879 immediately after that of 1875, does not, of course, make the one amendatory of or supplementary to the other. The two acts were designed for different, though similar, purposes, and are quite independent of each other.

Neither is it true that because it is provided in section 9 of the act under consideration that one who violates any of its provisions "shall be deemed a cheat and swindler, and subject to indictment," therefore the prosecution cannot be by affidavit and information. One guilty of the crime charged against appellant would certainly be "subject to indictment"

for the offense committed. But by section 1748, R. S. 1894 (section 1649, R. S. 1881), "all public offenses, except treason and murder," may, in certain cases, be prosecuted by affidavit and information, as well as by indictment.

The section of the statute thus providing for prosecution by affidavit and information in the cases named, was not intended to repeal any law providing for prosecution by indictment, but was intended only, in furtherance of the speedy and better administration of justice, to give another mode of prosecution in such cases. There is, therefore, no conflict between section 9, the penal section of the act now before us, and said section 1748, R. S. 1894 (section 1649, R. S. 1881), providing for prosecution by affidavit and information; and, hence, said section 9 was not repealed by section 300 of the criminal code. (Section 2364, R. S. 1894; section 2216, R. S. 1881.)

Under the assignment of error that the court overruled the motion for a new trial, counsel first contend that the allegations of the information are not sustained by the evidence. The essential allegations of the information are, that appellant was a warehouseman, as described in the act alleged to have been violated; that he received the wheat of the prosecuting witness for storage and gave him the receipt therefor; and that he removed said wheat beyond his immediate control, without the written consent of the holder of said receipt.

We are of opinion that all these allegations are abundantly sustained by the evidence. Indeed, we are unable to see that any of the evidence given is to the contrary.

Counsel contend particularly that the wheat was not given for storage, but was sold to appellant. The receipt given by appellant, and which, by section 2 of

the statute, section 8721, R. S. 1894 (section 6542, R. S. 1881), is made evidence in the action, shows clearly, we think, that the wheat was received by appellant as warehouseman and for storage in his warehouse, as contemplated in the statute. The receipt reads as follows:

"BURKET GRAIN ELEVATOR.

"BURKET IND., October 30, 1893.

"Received of Jonathan Tinkey (for Burket Grain Elevator) 126 bu. 20 lbs. wheat, test 59 wt. at stored per bushel. Fire and heating at owner's risk.

"G. A. MILLER."

Counsel contend that this receipt is not in form such as required by the statute. If this were true, it would ill become appellant to try to take advantage of it. The statute required him to give the receipt, and prescribed its form. If then, the paper given by him was in acknowledgment of wheat received by him for storage in his warehouse, as indeed it shows on its face; and if the paper so given as a receipt should fail in any particular to conform to the requirements of the statute, that would be rather an aggravation of appellant's wrong than an excuse for it. He ought to have given his receipt as required by the statute, and should not be heard to complain of his own fault in the matter.

But we think the receipt is in substantial compliance with the requirements of the statute, as provided in section 2, *supra*, which reads as follows:

"Every warehouseman, receiving anything enumerated in the preceding section, shall, on demand of the owner thereof, or the person from whom he received the same, give a receipt therefor. setting forth

the brand, quality, kind and description thereof, which shall be designated by some mark; which receipt shall be evidence in any action against said warehouseman."

The articles provided for in the act, and which may be received for storage in warehouses, include all grains, provisions, produce, merchandise and commodities whatsoever. The receipt given in the case at bar being for wheat, we think the receipt identifies the wheat as nearly as such a commodity can readily be identified, and as nearly as was intended by the statute.

The receipt certainly does not show that the wheat was purchased by the appellant. It would seem, as the evidence also shows, that the receipt was written on a blank form intended to be used both for wheat bought and for wheat stored. Here, in the blank space where the price per bushel would have been placed if the wheat were sold, is found, not any figures showing price to be paid per bushel, but the word "stored." And even more significant are the words: "Fire and heating at owner's risk." If the wheat were bought and not stored, the appellant himself would be the owner; and there would be no sense in guarding in the receipt against the risk of fire and heating. If, however, the grain were in store, and the holder of the receipt were the owner, then there would be good reason for providing that the destruction by fire or the heating of the grain should be at the owner's risk.

Had it been the desire of the parties that appellant should become the owner of the wheat, or that he should sell it after storage, the statute, in section 7, provided the means by which this might be done, with "the written consent of the person holding and producing such receipt."

Counsel also contend that from the manner in which appellant did business, and of which the prosecuting witness had knowledge, it must have been understood by them both that appellant might mix the wheat with other wheat in his warehouse, and might sell the mixture in the course of business. Undoubtedly the parties might have agreed that this should be done, but only by the written consent of the holder of the receipt or his surrender of the same. No agreement of that kind is shown; and until he thus abandoned his rights under the statute the holder of the receipt is entitled to claim the wheat for which it calls.

Here again, also, appellant is making a claim without any color of right. It is not pretended that he paid for the wheat which he now claims to have bought. Neither is it pretended that he has wheat in kind on hand which the holder of the receipt might have instead of the wheat for which he holds his receipt. On the contrary, the evidence shows that there was no wheat whatever in the warehouse, or elevator, but that appellant had disposed of it all, and thus embezzled the wheat of the prosecuting witness, the very evil against which the statute was directed. By thus converting to his own use the wheat of the prosecuting witness, the appellant became what the statute calls a "cheat and swindler," and subjected himself to the punishment there provided for, and which was inflicted upon him by the verdict of the jury.

In this connection we may notice the contention of appellant that the court should have given instruction number nine asked for by him. By this instruction it was sought to charge the jury that if the wheat was purchased to be paid for on demand, or if the agreement was that wheat of like kind and quantity might be taken out at any time for the wheat delivered to appellant, then appellant had a right

Miller *v.* The State.

to consider the wheat so received by him as his own, and so might sell or dispose of it at his pleasure. The objection to this instruction is that it was, as we have seen, not applicable to the evidence given in the case. That evidence showed that the wheat was not sold to appellant, nor placed in appellant's keeping to be exchanged for other wheat; but that it was stored in appellant's warehouse, at the owner's risk.

Instruction number two, given by the court, and of which appellant complains, was, as we think, a correct statement of the law, rather than said instruction number nine, requested by appellant. In this instruction, number two, the court, in effect informed the jury that if appellant, without Tinkey's written consent, mixed Tinkey's wheat with other wheat and sold the same, he was guilty of a violation of the statute. That is but stating what the statute expressly declares. It could not relieve appellant of wrong doing under the statute, because Tinkey should know of that wrong doing. Tinkey's receipt was the evidence, under the statute, of the wheat stored by him in appellant's warehouse. If appellant converted that wheat to his own use and sold it, or otherwise removed it from under his own control, the statute defined his crime as that of "a cheat and swindler," and fixed his punishment therefor. If he were unwilling to receive the wheat under those conditions, he was under no obligations to do so; and if, having so received the wheat, he was unwilling to keep it under the conditions, he could return it. He could not, however, convert it to his own use without incurring the penalty provided in the statute. Otherwise the enactment of the statute would have been a vain and useless piece of legislation.

The judgment is affirmed.

Filed March 31, 1896.