### KROPP FORGE CO. v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, ENGLAND et al.
#### No. 9070.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1947.

Max Murdock, of Chicago, Ill., for appellant.

Gilbert F. Wagner, Louis L. Dent, George M. Weichelt, John P. Hampton, Roger D. Doten, and Donald W. Nofri, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

The judgment from which this appeal was taken was entered in an action brought to determine which one of two insurance companies should bear the loss which plaintiff admittedly sustained, growing out of transactions where seven checks were issued by plaintiff and cashed in payment of merchandise supposedly delivered to it, but which had never been received.

One defendant, the New Amsterdam Casualty Company, admitted its liability for the whole claim. It, however, sought to hold the other defendant, the Employers' Liability Assurance Corporation, Limited, because of that Company's primary liability on a policy by it issued, which covered *forgery* (specifically defined by the policy) by one acting as agent of the insured.

The facts are largely covered by stipulation of the parties. Appellant issued what is called a forgery policy. The New Amsterdam Company issued what is known as a fidelity policy. The latter policy covered plaintiff's loss. Its right to recover against appellant, however, depends upon its showing that appellant's so-called forgery policy covered plaintiff's loss.

The precise question arises out of the language of appellant's policy which is as follows:

"The Employers' * * * Corporation * * * hereby agrees to indemnify the Assured * * * against losses sustained * * * by reason of

### Section A.

"Forgery or alteration of, on, or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by, or drawn upon or as a direction to the Assured, or made or drawn by one acting as agent of the Assured, or purporting to have been made or drawn as hereinbefore set forth, including

"(a) Any check or draft made or drawn in the name of the Assured payable to a fictitious payee and endorsed in the name of such fictitious payee whether or not such endorsement be a forgery within the law of the place controlling the construction thereof; and

"(b) Any check or draft procured in a face to face transaction with the Assured or with one acting as agent of the Assured by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, whether or not such endorsement be a forgery within the law of the place controlling the construction thereof."

The essential story may be told briefly as follows:

Plaintiff had an employee named Thomas J. Lane, who married another employee named Beatrice Agolia. After this marriage, the wife ceased to work as an employee. She and her husband conceived a scheme to defraud the plaintiff, which plan they executed. They operated under the name of Tolabeag Engineers. The first word was made up of the first two letters of each of the names of these two get-rich quick swindlers. The wife went to Cleveland and there rented an office. She made out false inventories of goods and sent them to the plaintiff. The husband, who remained as an employee of the plaintiff, fraudulently caused a receipt for these goods to be issued. The wife then sent a bill in the name of Tolabeag Engineers to plaintiff, and received a check in payment thereof. The check was made out to Tolabeag Engineers and was indorsed by the wife and cashed. This operation was repeated and plaintiff was defrauded out of a total of $12,477.35, before it caught up with Mr. and Mrs. Lane.

No business was transacted by Tolabeag Engineers and nothing was done at the Cleveland office, save as related. The wife made out false invoices, and presented the bills therefor, cashed the checks which plaintiff sent pursuant to the invoices and fraudulently obtained receipts. In fact, Tolabeag Engineers transacted no other business. The wife visited the Cleveland office, but rarely—two or three times in four months, and then only for a few minutes at a time. The space she rented was known as desk space in a community office. She had her mail sent to her in Chicago

in envelopes furnished by her. She also opened a bank account in Cleveland wherein she deposited moneys which she received when she cashed plaintiff's checks. The checks were endorsed for deposit.

Tolabeag Engineers was just a name to cover the fraudulent acts of Mr. and Mrs. Lane, who transacted no legitimate business. Tolabeag Engineers sold plaintiff nothing; it obtained checks for goods through fraudulent machinations of the husband. Plaintiff made out checks and sent them to Cleveland, in payment of false bills and upon the fraudulent intercompany receipts. No goods were in fact received by plaintiff from Tolabeag Engineers, who had no goods to sell. Checks were all made payable to Tolabeag Engineers and were cashed by the payee through the indorsement of the wife.

Appellant's policy defined forgery. It did not not confine its liability to what some state statutes technically define as forgery. It covered a broader field than the technical or the statutory crime of forgery. Being its own lexicographer, appellant made its own definition of forgery. In short, it defined the acts of plaintiff's agents, the commission of which, created a liability. It covered a check "payable to a fictitious payee and endorsed in the name of such fictitious payee." It is immaterial whether such endorsement "be a forgery within the law of the place controlling" the act.

■ Disposition of the appeal turns on whether the payee was a fictitious person. The District Court found that it was. We agree. Not only was there evidence to support this finding, but no other finding could have been made.

■ When it appears, as here, that the insurance company writing the policy clearly intended to avoid any and all technical definitions of forgery, and to cover a wider and broader meaning than criminal forgery, we conclude the language used should not be strictly or narrowly construed. In seeking to accomplish this purpose, appellant referred to the action of the payees of a check. In so doing it used the expression *"fictitious payee."* It now seeks to give to the word fictitious a nar-

row, specific meaning. It should not be permitted to do so. Even if the term be defined narrowly, it would cover the payee who cashed the check in this case.

The dictionaries have defined "fictitious" as follows:

Black's Law Dictionary—

"Founded on a fiction; having the character of a fiction; false, feigned, or pretended.

"Fictitious name. A counterfeit, feigned, or pretended name taken by a person, differing in some essential particular from his true name * * * with the implication that it is meant to deceive or mislead."

*Funk & Wagnalls' New Standard Dictionary—*

"Fictitious—substituted for something real; counterfeit; false; assumed; as, a fictitious name."

Webster's New International Dictionary—

"Feigned; imaginary; pretended; not real; fabulous; counterfeit; false; not genuine; as, fictitious name."

45 Corpus Juris, Sec. 12, page 376,

"Whether a name is the real one of the individual using it or is a fictitious or assumed one is ordinarily a question of fact. Without abandoning his real name, a person may, in the absence of statutory prohibition, adopt any name, style, or signature, wholly different from his own name, by which he may transact business, execute contracts, issue negotiable paper, and sue or be sued, unless he does so in order to defraud others through mistake of identity, it being the identity of the individual that is regarded, and not the name that he may bear or assume."

Judicial precedent also has defined fictitious persons to include such as the Tolabeag Engineers. International Union Bank v. National Surety Co., 245 N.Y. 368, 157 N.E. 269, 52 A.L.R. 1375; United States v. Turner, 7 Pet. 132, 8 L.Ed. 633; McCornack v. Central State Bank, 203 Iowa 833, 211 N.W. 542, 52 A.L.R. 1297; People v. Warner, 104 Mich. 337, 62 N.W. 405; State v. Wheeler, 20 Or. 192, 195, 25 P. 394, 10 L.R.A. 779, 23 Am.St. Rep. 119; Lyman v. State, 136 Md. 40, 44, 109

A. 548, 9 A.L.R. 401; 23 Amer.Jur. page 681; 37 C.J.S., Forgery, § 10 p. 39.

■ The court did not err when it added interest. The stipulation of the parties related to the amount recoverable on the checks and was not intended to include or exclude interest thereon.

The judgment is affirmed.