Plaintiffs as heirs and legal representatives of Jake G. Levy, deceased, filed this suit against Miss Helen R. Lee, a notary public, for $1,962.50, being the damage allegedly suffered by Mr. Levy as a result of the negligence of this notary in signing and executing in her official capacity an act of mortgage, and paraphing the accompanying note, as the act of one Mrs. Genie Culpepper, when in fact same was executed by another person and constituted a forgery.
The Western Casualty and Surety Company, surety on her official bond, was named defendant for the amount of its bond.
Exceptions of no cause of action filed by both defendants were overruled. The issues raised by these exceptions have been settled by the filing of a supplementary and amended petition and the stipulation of facts contained in the record.
The answer of the notary constituted a general denial of plaintiffs' original and supplemental petitions, except to admit that she acted as notary public in the passing of the mortgage and the paraphing of the *Page 292 
note. Her answer asserted that she exercised due care and diligence in the performance of her duties as notary; that one of the parties who signed the note, one H. H. Seymour, was duly identified and known to her; that he was accompanied by his wife who was also properly identified and that he then identified a second lady accompanying him as a Mrs. Genie Culpepper (the record shows that the property described in the forged mortgage was owned by Mrs. Genie Culpepper), and that the said Seymour had previously obtained the confidence of Jake G. Levy, of the realtor employed by Mr. Levy, and of the lawyer who represented Mr. Levy in his negotiations with H. H. Seymour, who promised to deliver a mortgage on the property of his grandmother, Mrs. Genie Culpepper, to secure a proposed loan from Levy to Seymour. The answer further set forth that the mortgage and other papers were prepared by Mr. Levy's lawyer; that same did not show that Genie Culpepper was Seymour's grandmother and that defendant required of Seymour "such identification as would reasonably be required by an ordinarily prudent business person, and was not negligent in any respect; and if said Seymour perpetrated a fraud, then defendant was merely another victim of his fraud."
In the alternative, she pleaded that should her conduct be held negligent in any respect, Jake G. Levy was guilty of contributory negligence, as set forth in paragraph 32 of the answer quoted below, which barred recovery by his heirs: "That since the execution of the aforesaid paper defendant has been informed, and believes, and therefore avers that the aforesaid H. H. Seymour conceived and contrived a fraudulent scheme to raise money on a mortgage on the property of his grand-mother, Mrs. Genie Culpepper, without her knowledge or consent; that in furtherance of said scheme he contacted one Levin, a realtor, to obtain a loan on said property; that said Levin contacted Jake G. Levy, and the three of them inspected the property at times at which Seymour contrived to have his grandmother away from the premises; that Seymour was then referred to a lawyer who examined the title and drew the proposed mortgage papers on behalf of said Levy, but intrusted them to said Seymour for execution; that although it was represented by Seymour to all of said persons that he was obtaining a loan on his grandmother's property, none of them exercised the natural precautions or simple measure of contacting or interviewing the owner of said property; that Jake G. Levy and all of said persons representing him imposed their confidence in said H. H. Seymour, trusted him, and acted on his representations; that had any of them contacted the owner of the property, the fraudulent scheme of said Seymour would have been detected and no one could or would have been imposed upon, or injured; that if defendant should be held to have been negligent in any way, then Jake G. Levy was negligent in his dealings with Seymour, and in imposing trust and confidence in him, as above set forth, and that said negligence contributed to the alleged injury complained of by plaintiffs."
The answer of the Western Casualty and Surety Company presented similar defenses, and called the notary in warranty, under the terms of the bond. After her exception of no cause or right of action to the call in warranty was overruled, the notary filed an answer to same.
The District Court gave judgment rejecting plaintiffs' demands against all defendants and the case is before us on appeal from that judgment.
From the evidence and stipulation of counsel in the record, we make the following finding of fact. Mrs. Genie Culpepper is the owner of Lot 1544 of the Cedar Grove Addition to the City of Shreveport, Louisiana. She is the grandmother of one H. H. Seymour, who conceived the scheme of borrowing $2,100 through the forging of his grandmother's name on a note secured by mortgage on this lot in Cedar Grove. Through the placing of a business opportunity advertisement, he contacted Woodrow Levin, a licensed realtor. Levin contacted Mr. Jake G. Levy. Messrs. Seymour, Levin and Levy went together to examine the property on which was built Mrs. Culpepper's home. Mrs. Culpepper was not present. After examining the *Page 293 
property, Mr. Levy agreed to make the loan provided title was good and the note was secured by a valid mortgage on the property. Mr. Seymour suggested the employment of an attorney whom he had met while participating in bowling matches in the City of Shreveport. Mr. Levy agreed to employ this attorney to examine the title, and prepare the necessary act of mortgage and accompanying note.
When the title was found valid in Mrs. Culpepper, Seymour informed the attorney that his grandmother was infirm; that some members of the family were using their influence against her mortgaging the property, and asked that he be permitted to carry the papers out to her in order that he might complete the papers whenever Mrs. Culpepper would be so inclined, using a neighborhood notary. Seymour, who had never contacted his grandmother with reference to the loan, arranged for one Mrs. McKeon to pose as Mrs. Culpepper and in furtherance of this scheme, Seymour, his wife and Mrs. McKeon went to the office of the defendant notary before 9:00 a.m. and presented the note and mortgage forms prepared by the attorney representing Mr. Levy. Seymour introduced himself to the notary and produced cards from his billfold showing his height, weight, color of eyes and signature. He then introduced one of the ladies who accompanied him as his wife (she was in fact his wife) and the other as "Mrs. Genie Culpepper, his sister," who desired to mortgage her property and execute the note with him.
When the notary asked why the parties had not gone to the office of the lawyer who prepared the papers, her suspicions were allayed by the statement that Mrs. Culpepper desired to go on to work and the lawyer had not yet come down to his office. Since it was before 9:00 a.m., the notary accepted this plausible explanation, executed the mortgage and paraphed the note with Mrs. McKeon forging the name of Mrs. Genie Culpepper to both instruments.
Mr. Seymour carried the executed papers to Mr. Levy's attorney who, in good faith, accepted the papers at face value and rendered a written opinion to Mr. Levy that the note was secured by a valid first mortgage on the property of Mrs. Culpepper. This attorney who had met Mr. and Mrs. Seymour on several occasions at the Shreveport Bowling Alley, went with Seymour and identified him at the bank. Mrs. Culpepper's name did not appear on the check as payee and the bank delivered the money to Seymour.
When the first payment became due, Mr. Levy could not locate Mr. Seymour. When he wrote a letter to Mrs. Culpepper demanding payment, the whole scheme was exposed. Seymour and his accomplices when arrested and prosecuted, pleaded guilty. Mrs. Culpepper filed suit and obtained judgment declaring the note and mortgage a forgery insofar as her signature was concerned. Mr. Levy obtained judgment against Seymour for the amount due under the note, but, as was expected, the Sheriff's return on the writ was "Nulla Bona." Seymour and his accomplice, under suspended sentences for forgery, had made, at the time of the trial, fourteen monthly payments of $27.50 each on the forged note.
In the case of Howcott v. Talen, et al., 133 La. 845, 63 So. 376, 379, 49 L.R.A., N.S., 45, the Supreme Court of Louisiana summed up the responsibility of a notary with regard to identification of persons appearing before him in the following language: "In fact, so long as he (the notary) exercises the precaution of an ordinarily prudent business mail in certifying to the identity of the persons who appear before him, it may be doubted whether he has any other function to discharge; and we are of opinion that such precaution was exercised by Dearing in the matters here complained of."
In that case, one Boulmay concocted and confected a fraudulent scheme which included the opening of the succession of persons who never existed and in the obtaining of judgments purporting to put the fictitious heirs of such fictitious persons in possession of certain pieces of real estate and the preparing of deeds in which the fictitious *Page 294 
heirs purported to convey the property described in the fictitious judgments. Felix H. Boulmay was the main actor in the whole matter. The notary apparently accepted the identification of this Felix H. Boulmay. The Supreme Court noted that a number of witnesses testified that they had known Boulmay for many years and there was no evidence to show that he was disreputable (prior to this transaction, of course), or a person with whom ordinary business might not be transacted in the ordinary way. The Court reversed a judgment against one Dearing, a notary, and did not consider him responsible legally for receiving forged acknowledgments to instruments from two men whom he accepted as being "Moore" and "Sapers" and passing their acknowledgments as Moore and Sapers when the only knowledge which he possessed of their identity was the introduction of Boulmay, whom the notary had known for twenty years.
The notary in this case required of Seymour the identification ordinarily used. Her testimony that she required identification is corroborated by a disinterested witness, Mr. Roland W. McKneely, who saw Seymour produce his billfold and display cards to the notary and heard Seymour introduce his wife and "sister." Seymour himself called as a witness admitted his part in the entire transaction (to which he had already pleaded guilty in criminal court) and testified that he identified himself to the notary as she had testified. In fact, her identification of Seymour himself was complete and acceptable and the question for us to determine is whether her action in accepting his introduction of Mrs. McKeon as Mrs. Genie Culpepper constituted negligence sufficient to make her and her bondsman liable for the damage resulting in the forgery of Mrs. Culpepper's name to the mortgage and note.
The papers nowhere showed that Mrs. Culpepper was a grandmother of Seymour, or of any one else, and the action of the notary, after exercising due care in the identification of Seymour, in accepting his introduction of his wife and "sister" was not unusual and was the exercise of the care and diligence that reasonably prudent business people exercise under like circumstances.
The record shows that the notary acted in complete good faith and acted in the belief that the entire transaction was regular and authentic. The realtor and the attorney were likewise free of any knowledge that Seymour was planning on carrying out a scheme to defraud Mr. Levy. Of course Mr. Levy had not the slightest suspicion of Seymour, otherwise he would have refrained from completing the loan. All three of these persons had more opportunity of observing Seymour than did Miss Lee, the notary. The failure of Mr. Levy, the realtor and the attorney assisting him to contact Mrs. Culpepper and verify her connection with the loan and the failure to place her name on the check as payee and thus insure that she could exercise whatever control she desired over the proceeds, was, to say the least, as serious a deviation from safe business practices as was the acceptance by the notary of Seymour's introduction of his "sister" as "Mrs. Genie Culpepper." It would have been only common prudence to make a co-payee of Mrs. Culpepper, who was a co-maker of the note and the only maker putting up security.
Granting that the notary was negligent, it follows that the plea of contributory negligence is good. She was, as the Supreme Court stated in the Howcott case, supra, a "victim, rather than a confederate," and if she were negligent in accepting Seymour's introduction of his "sister" after his valid and convincing identification of himself, Mr. Levy, his attorney and his realtor were equally, if not more, negligent in having accepted Seymour's statements that his grandmother was willing to mortgage her property; in permitting him to take the papers out for her signature and in at no time making contact with her and last, but not least, in failing to place her name as payee on the check, which Mr. Levy's attorney delivered to Seymour in exchange for the forged note. Plaintiffs as heirs are chargeable with the acts of Mr. Levy and those representing him in the transaction.
The judgment appealed from is affirmed, with costs. *Page 295