PEAK *v.* STATE OF INDIANA.

[No. 29,722. Filed January 11, 1960. Rehearing denied March 10, 1960.]

4. See: *Harris, et ux.* v. *Souder, Supt., etc.* (1954), 233 Ind. 287, 119 N. E. 2d 8.

*Frank I. Hamilton,* of Greensburg, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Assistant Attorney General, for appellee.

ARTERBURN, C. J.—The appellant Peak was charged under Acts 1905, ch. 169, §491, p. 584, being §10-3603, Burns' 1956 Replacement, with making a false certificate as a Notary Public to a deed purported to be executed by Dean Burton to Lawrence A. Peak and Geneva A. Peak, the parents of the appellant Peak. He was tried by jury, found guilty as charged and sentenced to not less than one [1] nor more than three [3] years in the Indiana State Prison and fined in the sum of one thousand dollars [$1,000.00].

The error first assigned is that the court erred in overruling appellant's motion to quash the indictment. The points urged by the appellant are that the indictment "fails to set forth that the notary did not *see* the party execute the document and that the party failed to acknowledge the execution." (Our italics.)

The statute upon which the prosecution was based contains no requirement that the notary *see* the party execute the deed.

The statute reads as follows:

> "*Falsely attesting acknowledgment.* — Whoever, being a notary public or other officer authorized to take and certify acknowledgments of conveyances, mortgages or other instruments of writing, shall append his signature as such officer when no official seal is required, or who shall append his signature or affix his official seal when such seal is required by law to be affixed to the certificate of acknowledgment of any conveyance, mortgage or other instrument of writing required to be recorded

in this state, or which can not be legally recorded therein without acknowledgment and certificate thereof, when at the time of such signing or sealing, the grantor, mortgagor or other party executing such deed, mortgage or other instrument had not first acknowledged the execution thereof before such notary public or other officer as aforesaid, shall, on conviction, be imprisoned in the state prison not less than one [1] year nor more than three [3] years, and fined not less than ten dollars [$10.00] nor more than one thousand dollars [$1,000.00]." Burns' §10-3603, 1956 Repl.

Further, the indictment does contain the allegation that the grantor (Dean Burton) "had not acknowledged the execution" of the deed.

The indictment reads as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that ROBERT A. PEAK on or about the 6th day of January, A.D. 1955, at and in the County of Marion and in the State of Indiana, being then and there a Notary Public in and for the State of Indiana, and authorized to take acknowledgment of deeds in Marion County in said State, did then and there feloniously append his signature as such officer and affix his official seal to a certain regular and legal form of acknowledgment purporting to be the acknowledgment of one Dean Burton, before the said defendant, as such Notary Public, to a certain false, forged and counterfeit deed of conveyance of real estate, situate in the County of Marion, State of Indiana, and bearing the date of the 6th day of January, 1955, purporting to be signed and executed by said Dean Burton to Lawrence A. Peak and Geneva A. Peak, Husband and Wife, in the words and figures following.

In Witness Whereof, the said Dean Burton, unmarried hereunto set his hand and seal, this 6th day of January, 1955.

|  |  |  |
|---|---|---|
| _____ (Seal) | Dean Burton | (Seal) |
| _____ (Seal) | Dean Burton | (Seal) |

State of Indiana, Marion County, ss:

Before me, the undersigned, a Notary Public in and for said County and State, this 6th day of January, A.D. 1955, personally appeared the within named Dean Burton, unmarried. Grantor in the above conveyance, and acknowledged the same to be his voluntary act and deed, for the uses and purposes herein mentioned. I have hereunto subscribed my name and affixed my official seal.

My Commission Expires:
August 28, 1958

Robert A. Peak
Robert A. Peak
Notary Public

when in fact the said Dean Burton had not executed said deed and had not acknowledged the execution thereof before the said defendant, as he, the said defendant, then and there well knew, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

/s/ John G. Tinder
Prosecuting Attorney
Nineteenth Judicial Circuit."

It is further urged that there is no allegation that the appellant certified to the acknowledgment nor that the deed was an instrument entitled to be recorded.

The entire certificate of the notary is set out verbatim in the indictment and this eliminates the necessity of allegating a conclusion as to its legal significance. 1 R. S. 1852, ch. 23, §28, p. 232, being §56-130, Burns' 1951 Replacement.

The same conclusion must be reached with reference to a failure to state that the deed was entitled to be recorded. All courts of this State take judicial notice of the statute which entitles a deed of conveyance to be recorded. 1 R. S. 1852, ch. 23, §18, p. 232, being §56-123, Burns' 1951 Replacement; 1 R. S. 1852, ch. 23, §34, p. 232, being §56-136, Burns'

1951 Replacement; 8 I. L. E., Criminal Law, §114, p. 212.

The court did not err in overruling the motion to quash.

The second error assigned is that the court erred in overruling appellant's motion for a new trial, wherein he says the court abused its discretion in overruling his motions for continuances. There is a failure to set forth the facts in sufficient details or authorities in support thereof. There is no showing of an abuse of discretion by the court. *Hartsfield* v. *State* (1950), 228 Ind. 616, 94 N. E. 2d 453; *Rose* v. *State* (1941), 219 Ind. 44, 36 N. E. 2d 767; *Krupa* v. *State* (1927), 198 Ind. 695, 154 N. E. 666; *Liese* v. *State* (1954), 233 Ind. 250, 118 N. E. 2d 731.

Error is also claimed in the refusal to give Instruction 1 tendered by the appellant.

This was a peremptory instruction in the following form:

### "DEFENDANT'S INSTRUCTION NO. 1

You and each of you are instructed that the State of Indiana has introduced no evidence whatsoever that the Defendant appended his signature or affixed his official seal to the deed described in the indictment, when at the time of such signing or sealing, the grantor had not first acknowledged the execution thereof before said Defendant, a Notary Public. You are, therefore, instructed and directed by this court to find the Defendant not guilty of the charge in the indictment."

The following is a part of the testimony of Virgil Smith:

"Q.  I ask you whether or not at the time you affixed this signature of Dean Burton, whether

or not Robert Peak acknowledged and swore you to this deed?

"A. He sure did. He made me hold up my hand and swear to it.

"Q. Made you hold up your hand and swear to it?

"A. Yes, sir."

Peak testified:

"Q. Who signed that? (the deed)

"A. Virgil Smith.

"Q. Did you acknowledge that signature?

"A. I did.

"Q. Tell the jury exactly what you did?

"A. I had Virgil Smith to hold up his right hand and I said 'Mr. Burton, do you swear that that's your signature and that it is your act and deed?' He said, 'I do,' and I acknowledged it. I signed my name and put the seal on."

In view of the above evidence the court could not give the peremptory instruction without misstating the evidence and committing error. *Pierson* v. *State* (1921), 191 Ind. 206, 131 N. E. 397; *Miller* v. *The State* (1896), 144 Ind. 401, 43 N. E. 440; *Cole* v. *State* (1922), 192 Ind. 29, 134 N. E. 867.

We come now to the most strongly contested phase of this case, namely that the verdict is not sustained by the evidence.

The gist of the charge is that the appellant Peak, as a Notary Public, affixed his official seal and certificate of acknowledgment to a deed that one Dean Burton had executed "when in fact the said Dean Burton had not executed said deed and had not acknowledged the execution thereof before the said defendant as he the said defendant, then and there well knew . . ."

The evidence at the trial was that one Nile Tever-
baugh originally purchased the real estate in question
while head of the right-of-way department of the State
Highway Commission of the State of Indiana; that al-
though the real estate involved in the transactions per-
tained to the right-of-way for Madison Avenue, he made
the purchase as a private transaction and had the deed
made to Dean Burton named as grantee therein, who he
testified was his grandson, 4-5 years of age. Teverbaugh
stated that he intended to have the deed made to such
grandson for personal reasons. Virgil Smith, a member
of the State Highway Commission from June, 1954 to
May, 1955 and chairman of the Commission from the
latter date until January, 1957, under whom Tever-
baugh worked, learned of this private transaction and
insisted on purchasing the real estate for his own per-
sonal benefit from Teverbaugh for $3,000. Teverbaugh
testified he finally threw the original deeds (with Dean
Burton named therein as grantee) to Smith on a daven-
port in his apartment and took $3,000. from Smith for
the property. No guardian was appointed for or deed
made by the grandson Dean Burton to Smith, although
the testimony reveals he knew the grandson and had
seen him ten to twelve times.

Virgil Smith then told the appellant, a friend and
attorney of long standing, that he had some real estate,
the title to which he desired to place in another's name
and gave him the deeds and requested appellant to pre-
pare a deed for the property in question to be executed
by Dean Burton, and find some one whose name could
be used as grantee also, other than Smith. Appellant
prepared the deed accordingly and then went to Smith
and asked him where he could find Dean Burton to take
such grantor's signature and acknowledgment of exe-
cution. Smith then stated to the appellant that "I am

Dean Burton and I will sign and execute the deed." Appellant says that he thereupon, as a lawyer, made some investigation and found in American Jurisprudence that the use of fictitious names in business transactions was permissible. He also read therein the following statement:

". . . in the absence of a statute or judicial adjudication to the contrary, there is nothing in the law prohibiting a person from taking or assuming another name, *so long as he does not assume a name for the purpose of defrauding other persons through a mistake of identity.*" (Our italics.) 38 Am. Jur., Name, §11, p. 601.

He thereupon took Smith's signature and acknowledgment and certified the same accordingly. Appellant, with Smith's understanding, placed his (appellant's) parents' names in the deed as grantees.

The question thus presented is: did the named grantee, Dean Burton, acknowledge the execution of the deed in question as certified by the certificate of the appellant Peak as a notary public, or was it false by reason of no such acknowledgment of its execution having been taken by the appellant?

If this were all the testimony in the case, a prima facie case was made out under the wording of the statute by the State. The evidence is undisputed that the signature on the deed in question was not that of Dean Burton, the purported grantor and the one who owned the property and to whom the original deed was made. There is no evidence that either he or his guardian ever acknowledged the deed.

The substance of the appellant's defense is that *although the criminal statute is unqualified and contains no worded exceptions therein providing for the use of assumed or fictitious names,* nevertheless this

court should imply such an exception on the basis of the common-law right to use an assumed name under circumstances where no fraud is intended. When we give consideration to the limited situations in which an assumed or fictitious name may be used at common law, we find that it is narrowly limited to an *honest* transaction *involving no fraud*. Every statement that we have been able to find relating to the use of an assumed or fictitious name by a person in taking title to property is *always qualified by the provision that it cannot be done for the purpose of fraud*.

Appellant cites the case of *Leroy* v. *Wood* (1943), 113 Ind. App. 397, 47 N. E. 2d 604, where it is held in a partition suit that a husband and wife may take title in the assumed name of Ming instead of their true name of Wood. However, even in that case, the court recognizes that if the name were used in a fraudulent scheme the rule would be different, saying (at p. 401):

> "The appellant asserts that the deed shows on its face that it was made for the purpose of some sort of concealment and for some purpose other than to advance the common family interest. The complaint is silent as to their reason or purpose in taking the title in a fictitious or assumed name and there is no claim that if some sort of concealment was in fact intended it was fraudulent or harmful to anyone or that it was designed to or did work any injustice of any kind. The appellant's brief speaks of undue influence, but there is no allegation thereof or reference thereto in the complaint."

The use of fictitious names is not to be encouraged by the courts. It lends itself too readily to fraud by reason of concealment involved and thus is too likely to be used against a public interest or a private interest, particularly those of creditors or other interested parties. It is well settled the law does not

countenance or permit the use of a fictitious or assumed name in the execution of a fraudulent scheme. 65 C. J. S., Names, §9, p. 9; 38 Am. Jur., Name, §11, p. 600; 21 I. L. E., Names, §3, p. 246; *Rerick* v. *Ireland* (1921), 76 Ind. App. 139, 131 N. E. 527; 1 Am. Jur., Acknowledgments, §188, p. 397; 1 C. J. S., Acknowledgments, §144d., p. 909.

Applying that test here in this case, it is plain that the evidence shows that the name of Dean Burton was used by Virgil Smith with fraudulent intent and purpose. All the evidence points to the fact that he, as Chairman of the State Highway Commission, was using his position in this particular transaction to buy the property through the use of a fictitious name and then sell it to the State of Indiana at a considerable profit. The use of a fictitious name in this case was not authorized at common law under the circumstances. 21 I. L. E., Names, §3, p. 246; 65 C. J. S., Names, §9, p. 9; 38 Am. Jur., Name, §11, p. 600.

The appellant Peak, however, urges upon us a still further exception to the statute, namely, that even though Virgil Smith had no legal right to use a fictitious name to commit a fraud under the circumstances, still the criminal statute is not applicable to the appellant because the appellant was innocent of any wrong-doing and had no knowledge or reasonable ground to believe that Virgil Smith was acting fraudulently in the use of a fictitious name.

The jury had the duty here to determine that question from all the evidence. In doing so the members of the jury could use their own personal experiences and knowledge of every-day matters in affairs of this sort. *McDonald* v. *State* (1954), 233 Ind. 441, 118 N. E. 2d 891; *Beavers* v. *State* (1957), 236 Ind. 549, 141 N. E. 2d 118; *Heyverests* v. *State* (1931), 202

Ind. 359, 174 N. E. 710; *Bottorff* v. *State* (1927), 199 Ind. 540, 156 N. E. 555; *Partlow* v. *State* (1929), 201 Ind. 207, 166 N. E. 651.

The average person views with suspicion any use of a fictitious name. Even appellant Peak admits his uncertainties in this regard when he hesitated long enough to go to the law library. It is true a fictitious name may be used honestly in one's private affairs, but its very use puts on notice, a person who has knowledge of such use, that there is a purpose to conceal something. If it involves a public official, as appellant Peak well knew in this case, who is dealing in property connected with this person's official duties as highway commissioner, there is every reason to conclude the motive is not in the public interest. Such concealment cannot be condoned nor approved. We do not believe that the appellant Peak was no naive as an attorney as not to suspect the illegality involved in the use of the fictitious name. Both Peak and Smith had known each other for about thirty years and resided in the same small town for about the same period. He knew Virgil Smith was married, yet Peak prepared the deed and acknowledgment which stated that Dean Burton was an unmarried man. Peak's testimony when asked to recount what he did before he prepared the deed is:

"A.   Well, there was a couple of things that were done. One, upon Mr. Smith giving me these two deeds, I asked the name of Dean Burton's wife and Mr. Smith said he was unmarried. He was single. I stated, also, that the title should be checked . . ."

It was later that Peak testified that he asked Smith where he could find Dean Burton to get his signature and acknowledgment. When Smith said "I am Dean

Burton," Peak saw no reason to change the deed to show Dean Burton as Virgil Smith was a married man.

The law cannot countenance a transaction and stamp with approval its legality, which eliminates the necessity of a wife signing a deed. If it did, it would offer an easy, evasive and fraudulent method of eliminating a wife's statutory interest in her husband's real estate. A wife would rarely be able to discover such transfers made in a fictitious name by her husband without her signature. Courts do not lend themselves for the approval of that kind of chicanery. Appellant as a lawyer knew that.

If these facts alone were all that were before the jury, in our opinion it would have been sufficient for any reasonable person to arrive at the conclusion that the appellant knew or ought to have known of the illegal use of the fictitious name by Smith. However, there are additional factors herein that support the conclusion arrived at by the jury, namely, the active participation of the appellant in the fraudulent transaction. The evidence shows that he furnished his own parents' names as grantees and that $25,800. was paid by the State in the summer of 1955 to the parents for the real estate. Appellant took charge of the money; paid $3,000. to Smith as a return of the consideration for the deeds—later cashed a check for $19,800. and delivered the proceeds to Smith, leaving on deposit $3,000. to pay federal and state taxes.

It is further shown that he participated in the proceeds and profits from the fraudulent transaction to the extent of $1,000 and $100 expenses paid to him by Smith personally. It is common knowledge that the services of a scrivener in making a deed or a notary public taking the acknowledgment of same are not computed at such high figures. Jurors know

these every-day facts. We on the Court cannot ignore such facts and the inferences to be drawn therefrom.

It is clear Peak and Smith used Peak's parents as "dummies" in the transaction. Although the deed was made January 6, 1955, it was not put on the public record by Peak until June 21, 1955 for the public eyes to see. This was shortly before the State purchased the property.

Ted Knapp and Robert Gray as witnesses in substance testified that during their investigation of the transaction in 1957 upon inquiry appellant Peak told them that he knew "Dean Burton"; that he met him in the Claypool Hotel; that he checked the title to the real estate in question at the court house; made a deal to purchase the property from him for $3,000. and got the blank forms of deeds from a stationery shop for that purpose. He told these witnesses that he checked Dean Burton's license number at the time to see if the signature was the same as on the deed. Peak described Dean Burton as a man weighing about 170 pounds, 5′ 10″ or 5′ 11″, dark hair, graying slightly and he knew Virgil Smith, and that Dean Burton was not Virgil Smith.

Why should Peak tell such a story if he was convinced of his own innocence and the right of Virgil Smith to use the name of Dean Burton in conveying the real estate? The jury had the right to draw its conclusions from this attempt to conceal the crime charged and that appellant knew Virgil Smith was not Dean Burton and could not use such a name in the transaction.

Peak was not an ignorant man. He had a college education, legal training and was a man of maturity. Peak was not compelled to acknowledge the deeds. He could have refused when asked by Smith to make the acknowledgment of the ficti-

tious name. He did not. Instead he prepared the deed, furnished grantees, made out the acknowledgment and took the money consideration for the sale made to the State. With all the knowledge of the surrounding circumstances he participated in the profits and attempted to conceal the true nature of the transaction from the beginning, when he knew it was all connected with highway right-of-way matters. These facts should dispose of the question of the guilty knowledge of appellant Peak.

We cannot override the finding of the jury and say that the evidence shows without contradiction that appellant Peak acted ignorantly and innocently. The jury under the circumstances had the right to draw the contrary conclusion. 8 I. L. E. Criminal Law, §402, p. 458; *Smith* v. *State* (1939), 215 Ind. 629, 21 N. E. 2d 709; *Lucas* v. *State* (1910), 173 Ind. 302, 90 N. E. 305.

The law does not permit the use of a fictitious name to perpetrate a fraud. There was no license in the law for the use of the name Dean Burton in such transaction by Virgil Smith. There was sufficient evidence for the jury to conclude the appellant knew the use was illegal and Virgil Smith had no right to use the name Dean Burton fictitiously in the execution of the deed.

Finally appellant urges that the court erred in overruling appellant's motion for a new trial based upon the affidavit of the appellant which stated in substance that one of the jurors was guilty of misconduct which the appellant in his affidavit stated he learned after the trial from reading in a newspaper. The newspaper account stated that a juror had said they convicted the defendant "because we couldn't free one man and displease the whole community" and that the "whole public would suffer" if Peak were turned

loose. It is apparent that this affidavit is based upon hearsay obtained through a newspaper. It is well settled that hearsay is not sufficient grounds for impeaching the verdict of the jury. *Hutchins* v. *The State* (1898), 151 Ind. 667, 52 N. E. 403; *Varner* v. *State* (1929), 89 Ind. App. 293, 166 N. E. 292; 9 I. L. E., Criminal Law, §764, p. 289.

The judgment is affirmed.

Achor and Landis, JJ., concur.

Bobbitt, J., dissents with opinion.

Jackson, J., not participating.

## DISSENTING OPINION

BOBBITT, J.—I dissent from the majority opinion because appellant herein was not afforded a fair trial for the reason that he was indicted under Acts 1905, ch. 169, §491, p. 584, being §10-3603, Burns' 1956 Replacement, for falsely acknowledging the execution of a deed before him as a notary public, but was convicted upon evidence which might sustain a conviction for conspiracy to defraud the State but which in no way sustains a conviction of the crime charged in the indictment, viz.: "Falsely Attesting Acknowledgement."

To keep the issue clearly before us it must be kept in mind that appellant herein was charged by indictment with falsely attesting an acknowledgment of a deed under §10-3603, *supra*, and that this is not an action against Virgil Smith for the alleged fraudulent use of a fictitious name, nor was appellant in the present case charged with conspiracy to commit a felony.

The rule is well settled that a certificate of acknowledgment, regular on its face, is presumed to state the truth, and the burden in this case is on the State to overcome such presumption beyond a reasonable doubt.

*Severtson* v. *Peoples* (1914), 28 N. D. 372, 148 N. W. 1054, 1058.

In the present case the State was required to prove, not only that the acknowledgment itself was false, but that appellant knew that the certificate was false at the time he affixed his signature and notary public seal thereto. John's American Notaries, 5th Ed., §34, pp. 44, 45; *People* v. *Marrin* (1912), 205 N. Y. 275, 98 N. E. 474, 475, 43 L. R. A. (N. S.) 754.

Appellant asserts, and I think properly so, that the evidence is insufficient to show that he knew at the time he affixed his signature and seal as a notary public to the deed described in the indictment, that Smith was not Dean Burton as he represented himself to be.

There is no direct evidence in the record here, nor is there any from which a reasonable inference might be drawn, to support the charge that appellant knew that Virgil Smith was not, in truth and in fact, executing the deed in the assumed or fictitious name of Dean Burton at the time he took the acknowledgment. Under the charge in the indictment here, there must be some substantial evidence of probative value from which the jury could reasonably have inferred that appellant certified to the acknowledgment of the deed, knowing that Smith was not one and the same person as Dean Burton, and that he (Smith) was not in fact the actual grantor. *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Harrison* v. *State* (1952), 231 Ind. 147, 167-168, 106 N. E. 2d 912, 32 A. L. R. 2d 875; *Shutt* v. *State* (1954), 233 Ind. 169, 174, 117 N. E. 2d 892; *Dobson* v. *State* (1959), 239 Ind. 673, 158 N. E. 2d 455, 456.

Appellant admits that he appended his signature and affixed his official seal to a certificate certifying that Dean Burton, grantor in the deed in question, personally appeared before him, a notary public, on January 6,

1955, and acknowledged the execution of the deed. He contends, however, and the evidence is undisputed, that Smith, who had been a client of his in his home town of Milan, Indiana, for about twenty years, called him a few days prior to January 6, 1955, and asked him to come to his (Smith's) office in Indianapolis, which he did. Upon arriving there, Smith told him that he had a piece of property that he wanted to transfer in "somebody's name"; that Smith asked him to find somebody who would consent to act as grantee and accept title to the property for Smith, and requested appellant to prepare the deeds and return them to him for signature after he had obtained a satisfactory grantee. Following this conversation appellant procured the consent of his parents, who lived in Indianapolis, to act as grantees in the deed and accept legal title to said property. When the deed was prepared, appellant returned it to Smith and inquired, "Now, where will I go to find Dean Burton," and Smith said, "You are looking at him," whereupon appellant said, "What?" and Smith replied, "That's right, you are looking at him."

Appellant then told Smith that before the deed was signed or anything further was done, he wanted to check some authorities to find out if he (Smith) could assume the name of Dean Burton and transfer property as such. Appellant then went to the Supreme Court library, and after satisfying himself that Smith could take title to real estate in an assumed name, he then later informed Smith that it was proper for him to sign the deed, and that he would take the acknowledgment of his signature as Dean Burton. Smith then signed the deed in his usual handwriting and acknowledged the execution of the deed in the assumed name of Dean Burton.

"In general, in the absence of statutory prohibition, a person, without abandoning his real name, may adopt or assume any name, wholly or partly different from his name, by which he may become known, and by which he may transact business, execute contracts, and carry on his affairs, unless he does so in order to defraud others, or he is inhibited by judicial adjudication, since it is the identity of the individual that is regarded, and not the name which he may bear or assume. . . .

"The assumed or fictitious name adopted may be either a purely artificial name, or a name that is or may be applied to natural persons; . . ." 65 C. J. S., Names, §9, pp. 9, 10. See also: *Schofield* v. *Jennings, Administrator* (1879), 68 Ind. 232, 235; *Kropp Forge Co.* v. *Employers' Liability Assur. Corp.* (1947), 7 Cir., 159 F. 2d 536, 538; *Moore* v. *Bank of Dahlonega* (1950), 82 Ga. App. 142, 60 S. E. 2d 507, 511; *Homan* v. *Wayer* (1908), 9 Cal. App. 123, 98 Pac. 80, 82.

It has also been held that a grant to an actual person, by a fictitious or assumed name which he has assumed for the occasion, is valid. *McWhorter* v. *McWhorter* (1929), 99 Cal. App. 293, 278 Pac. 454, 455.

I shall not here repeat the evidence recited in the majority opinion. However, I deem it necessary to include certain evidence which is omitted from the recital of the evidence in the majority opinion, and which I believe is determinative of the issues here presented.

Such evidence is as follows:

Sometime during the summer of 1955 Mrs. Peak received a telephone call advising her that the Highway Commission was going to buy the lots described in the deed abovementioned. Subsequently a man from the State Highway Commission came to her home with certain papers for her and Mr. Peak to sign. These papers were later shown to be a grant to the State Highway Commission of the State of Indiana.

Niles Teverbaugh testified, as a witness for the State, that he was the head of the right-of-way department of the State Highway Commission at the time the transactions here in question transpired; that he had an opportunity to buy lots seven and eight as described in the deed from Dean Burton to the Peaks, and that after discussing the matter with his wife they decided to buy the lots for their grandson, Carrie Dean Burton, who, at the time of appellant's trial, was eight years of age; that he later sold these lots to Virgil Smith for the sum of $3,000, and made the transfer by delivering the deeds which were executed by the original owners to Dean Burton, as grantee; and that Smith accepted the deeds as tendered and paid the witness $3,000 in cash.

Teverbaugh further testified that he first met appellant Peak in a lawyer's office in Milan, Indiana, after the news broke about the transaction, which was about two and one-half years after the delivery of the deed to Smith. This evidence came from a witness for the State and is undisputed.

Further undisputed evidence, corroborated by State's witness Teverbaugh, is that appellant did not know that Teverbaugh had a grandson whose name was Carrie Dean Burton or Dean Burton Teverbaugh until more than two years and four months after the execution of the deed described in the indictment, nor is there any evidence that appellant knew that Teverbaugh or his grandson was involved in the purchase or sale of any lot on Madison Avenue until sometime during the month of April, 1957, and there is, in my opinion, no evidence from which any reasonable inferences of these facts might be drawn.

Virgil Smith testified, on direct examination, as a witness for the defense, that he gave appellant $1,000 as a gratuity for the work he had done in connection

with the transaction involving the lots in question, and $100 for expenses; that appellant did not charge any fee nor did he request any part of the money received from the sale of the lots. Smith testified, on cross-examination, that he had known appellant for twenty years and that he had never used the name of Dean Burton prior to January 6, 1955.

We have been furnished with no authorities by either party in this case which are of any assistance in determining the question here under consideration.

Certain authorities pertaining to the civil liability of a notary public have been cited by the State. While, as a general rule, a notary public is not a guarantor of the absolute correctness of his certificate of acknowledgment, nor does he undertake to certify that the person acknowledging the instrument owns or has any interest in the land therein described, he does, however, undertake to certify that the party personally appearing before him is known to him to be the person described in and who executed the instrument.

As long as he exercises the precaution of an ordinarily prudent businessman in certifying to the identity of the persons who appear before him, it is doubtful if he has any other function to perform. *Barnard* v. *Schuler* (1907), 100 Minn. 289, 110 N. W. 966, 968; *Lee James, Inc.* v. *Carr* (1932), 170 Wash. 29, 14 P. 2d 1113, 1115; *Levy* v. *Western Casualty & Surety Co.* (1949), (La. App.), 43 So. 2d 291, 293.

The State contends that the evidence showing that appellant had been Smith's attorney for approximately twenty years, that he was a married man, that he and appellant had lived in the same town for approximately twenty years, that he (Smith) knew Teverbaugh's grandson, and that more than two years after the execution of the deed appellant gave a description of Dean

Burton which was not descriptive of Smith, is sufficient to sustain a verdict of the jury. I cannot agree with this contention.

Neither am I impressed with the State's argument that because appellant knew that Smith was married, he must have known that he was not Dean Burton, unmarried.

The State admits in its "Notes on Oral Argument" that "a *person* may be known by any name in which he may choose to contract, and in such name *he,* the person, may sue and be sued, and may also be criminally punished—he is the same person, has the same identity, regardless of what name or names he may choose to use." *Schofield* v. *Jennings, Administrator, supra* (1879), 68 Ind. 232, 234.

The majority opinion stresses the point that since Smith was a married man he could not be Dean Burton, an unmarried man. There is no logical reason why Smith could not have assumed the name of an unmarried person. The name which may be assumed is not limited to that of married persons, but may be any name either artificial or one that is or may be applied to natural persons. 65 C. J. S., Names, §9, pp. 9, 10, *supra.*

If someone assumes a different name for a specific purpose, there is nothing in the law that I can find that would prevent him from assuming the name of a single person, if to do so would better serve his purpose. The purpose of a name is to identify the person whose signature is certified by the notary, and when it does that it is sufficient to protect the notary from a charge of false acknowledgment under §10-3603, *supra.*

As I have already indicated, this case is not a civil action based upon a fraudulent conveyance, and I repeat that appellant herein is charged with falsely certifying

to the signature of Virgil Smith as "Dean Burton," knowing at the time he was not "Dean Burton."

Appellant is not charged with taking the acknowledgment of one Dean Burton, an unmarried person, but is charged with taking the acknowledgment of Dean Burton, when in fact "the said Dean Burton had not executed the deed." If Virgil Smith, assuming to be Dean Burton, and appellant having no reason to deny the assumption, did acknowledge the execution of the deed as certified by appellant, then there has been no violation of the statute under which appellant was prosecuted.

Both, in the trial court and in the majority opinion here, it seems to be taken as an established fact that appellant knew at the time he acknowledged the deed, that there was a real Dean Burton and that he was the grantor in the deed in question. The evidence shows that there was a Dean Burton who was the grantee in the deed which Teverbaugh got from the original owners of the lots. However, the indictment charges, in effect, that appellant knew this fact when he acknowledged the deed, but there is not a scintilla of evidence in the record, nor any from which any reasonable inference could be drawn, that appellant knew at the time he acknowledged the deed that there was a real Dean Burton. On the contrary, as is shown hereinabove, there is undisputed evidence by the State's own witness, that appellant did not know that there was a real Dean Burton, or about any alleged fraudulent transactions on the part of Smith, until about two and one-half years after he had notarized the deed in question.

I cannot lend my approval to a verdict which convicts a defendant on evidence that not only does not support a material charge in the indictment, but without contradiction, shows the contrary to be true. Neither can

I concur in an opinion which confirms the conviction in the present case upon the same misconception of the real issue presented by the indictment as apparently influenced the jury in its decision.

In my opinion the real answer to the conviction herein lies in the reasonable conclusion that had no real Dean Burton been in any way involved in the scheme shown by the evidence, appellant would never have been indicted for the false notarization of the deed.

The authorities cited in the majority opinion furnish it no support. I will not encumber this opinion by a discussion of each authority cited, but an examination of them will show that they are cases involving suits *against the person using* the fictitious name, either in the issuance of checks, securing driver's license, or civil suits for damages because of the fraudulent acts of the *person using the name.*

The present case is not one based on fraud. No one is suing here to recover damages because of the fraudulent use of a fictitious name. In none of the authorities cited in the majority opinion was any criminal statute such as was the one under which appellant was indicted and convicted, involved.

Smith had been appellant's client for more than twenty years. They were long-time personal friends, and before taking the acknowledgment appellant made an investigation of the law pertaining to the use of a fictitious name. Under these circumstances, it seems to me that any reasonable person must conclude that appellant Peak had exercised the precaution of a careful and prudent businessman in determining whether or not Smith was the person whom he represented himself to be and could legally convey the property described in the deed in the fictitious name of Dean Burton.

A man's liberty cannot be taken away on a mere guess or suspicion, and it is crystal clear to me from the evidence in the record here that appellant was convicted, and that conviction is being affirmed, on guess and suspicion. *Robertson* v. *State* (1952), 231 Ind. 368, 377, 108 N. E. 2d 711; *Steffler* v. *State* (1952), 230 Ind. 557, 563, 104 N. E. 2d 729; *Todd* v. *State, supra* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Hiner* v. *State* (1925), 196 Ind. 594, 598, 149 N. E. 168.

In my opinion the State has wholly failed to prove one of the essential elements of the crime charged, viz., that appellant, at the time he certified to the acknowledgment of the deed, knew that Virgil Smith was not in fact one and the same person as Dean Burton, grantor named in the deed, and for this reason the verdict of the jury is contrary to law and the judgment of the trial court should be reversed.

NOTE.—Reported in 163 N. E. 2d 584.